BLAINE H. EVANSON (SBN 254338)
  bevanson@gibsondunn.com
*MATT AIDAN GETZ (SBN 335038)
  mgetz@gibsondunn.com
GILLIAN B. MILLER (SBN 337338)
  gmiller@gibsondunn.com
SOPHIA AMIR (SBN 352338)
  samir@gibsondunn.com
MILENE A. MINASSIANS (SBN 352556)
  mminassians@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Tel.: +1 213.229.7754
Fax: +1 213.229.6754

*Counsel for Amici Curiae CASA of Los Angeles, Children's Legal Services of San Diego, East Bay Children's Law Offices, Dependency Legal Services, and Law Foundation of Silicon Valley*

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| OCEAN S., *by and through her next friend Craig Schultz, individually and on behalf of others similarly situated*, et al., <br><br> Plaintiffs, <br><br> v. <br><br> LOS ANGELES COUNTY, et al., <br><br> Defendants. | Case No. 2:23-cv-6921-JAK-E <br><br> **BRIEF OF AMICI CURIAE CASA OF LOS ANGELES, CHILDREN'S LEGAL SERVICES OF SAN DIEGO, EAST BAY CHILDREN'S LAW OFFICES, DEPENDENCY LEGAL SERVICES, AND LAW FOUNDATION OF SILICON VALLEY IN SUPPORT OF PLAINTIFFS** <br><br> **Hearing:** <br><br> Date: April 8, 2024 <br> Time: 8:30 a.m. <br> Courtroom: 10B <br><br> Judge: Hon. John A. Kronstadt |

# TABLE OF CONTENTS

Page

I. INTEREST OF AMICI CURIAE ................................................................................1

II. INTRODUCTION AND SUMMARY OF ARGUMENT ...................................2

III. ARGUMENT.................................................................................................................3

    A. Defendants have not shown that *Younger* abstention is appropriate. ........3

        1. Plaintiffs' claims do not fit the *Younger* framework. ......................4

        2. Plaintiffs could not press their claims in dependency proceedings. ..........................................................................................7

        3. At a minimum, abstention is inappropriate at this stage. ...............10

    B. Defendants' objections about equitable relief are misguided and premature............................................................................................................11

IV. CONCLUSION ..........................................................................................................12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*31 Foster Children v. Bush*,
329 F.3d 1255 (11th Cir. 2003) ................................................................. 6

*Applied Underwriters, Inc. v. Lara*,
37 F.4th 579 (9th Cir. 2022) ..................................................................... 5

*Canatella v. California*,
404 F.3d 1106 (9th Cir. 2005) .................................................................. 4

*Cook v. Harding*,
879 F.3d 1035 (9th Cir. 2018) ......................................................... 2, 3, 4, 6

*Courthouse News Serv. v. Planet*,
947 F.3d 581 (9th Cir. 2020) .................................................................. 10

*Jonathan R. ex rel. Dixon v. Justice*,
41 F.4th 316 (4th Cir. 2022) ................................. 3, 4, 5, 6, 7, 8, 9, 10, 11, 12

*Gomez v. Vernon*,
255 F.3d 1118 (9th Cir. 2001) ................................................................ 11

*L.H. v. Jamieson*,
643 F.2d 1351 (9th Cir. 1981) ................................................................. 8

*Laurie Q. v. Contra Costa County*,
304 F. Supp. 2d 1185 (N.D. Cal. 2004) .................................................. 6, 8

*Lewis v. Casey*,
518 US. 343 (1996) ............................................................................... 11

*Wyatt B. ex rel. McAllister v. Brown*,
2021 WL 4434011 (D. Or. Sept. 27, 2021) ............................................... 12

*Melendres v. Arpaio*,
784 F.3d 1254 (9th Cir. 2015) ................................................................ 11

*Melendres v. Maricopa County*,
897 F.3d 1217 (9th Cir. 2018) ................................................................ 11

*LaShawn A. ex rel. Moore v. Kelly*,
   990 F.2d 1319 (D.C. Cir. 1993) ............................................................................. 7

*Moore v. Sims*,
   442 U.S. 415 (1979) ............................................................................................... 5

*Negrete v. Los Angeles County*,
   2021 WL 2551595 (C.D. Cal. June 22, 2021) ....................................................... 5

*Jeremiah M. ex rel. Nicolai v. Crum*,
   — F. Supp. 3d —, 2023 WL 6316631
   (D. Alaska Sept. 28, 2023) .................................................................... 4, 5, 6, 7, 9

*ReadyLink Healthcare, Inc. v. State Comp. Ins. Fund*,
   754 F.3d 754 (9th Cir. 2014) ................................................................................. 6

*Redd v. Guerrero*,
   84 F.4th 874 (9th Cir. 2023) ............................................................................ 3, 11

*Rizzo v. Goode*,
   423 U.S. 362 (1976) ........................................................................................ 3, 11

*Safari Club Int'l v. Harris*,
   2015 WL 1255491 (E.D. Cal. Jan. 14, 2015) ........................................................ 2

*Sprint Commc'ns, Inc. v. Jacobs*,
   571 U.S. 69 (2013) ........................................................................................... 4, 10

*M.D. ex rel. Stukenberg v. Abbott*,
   907 F.3d 237 (5th Cir. 2018) ............................................................................... 12

*Tinsley v. McKay*,
   156 F. Supp. 3d 1024 (D. Ariz. 2015) ................................................................... 6

*B.K. ex rel. Tinsley v. Snyder*,
   922 F.3d 957 (9th Cir. 2019) ............................................................................... 12

*Connor B. ex rel. Vigurs v. Patrick*,
   771 F. Supp. 2d 142 (D. Mass. 2011) .................................................................... 6

*Wood v. Contra Costa County*,
   2020 WL 1505717 (N.D. Cal. Mar. 30, 2023) ................................................... 6, 8

*Younger v. Harris*,
   401 U.S. 37 (1971) ................................................................................................. 2

**Statutes**

Cal. Welf. & Inst. Code § 362 ............................................................................... 8

Cal. Welf. & Inst. Code § 366 ............................................................................... 9

Cal. Welf. & Inst. Code § 827 ............................................................................. 10

**Rules**

Cal. R. Ct. 5.900(d)(2) ........................................................................................... 5

Fed. R. Civ. P. 23(b)(2) ....................................................................................... 12

## I. INTEREST OF AMICI CURIAE

Amici curiae represent or advocate for minors and nonminor dependents across the state, including in dependency proceedings. They have a strong interest in the federal and constitutional rights of dependents in the foster-care system, including transition-age foster youth, and in the manner and forums in which those rights are adjudicated.

***CASA of Los Angeles***. CASA of Los Angeles trains volunteers who take action and advocate for children, youth, and families in dependency courts in Los Angeles County in order to support educational, mental, and physical health as well as safety and permanency goals. CASA of Los Angeles has a deep familiarity with Los Angeles County dependency proceedings and the work and expertise of dependency courts.

***Children's Legal Services of San Diego***. Children's Legal Services of San Diego's lawyers are court-appointed to represent minors and nonminor dependents in San Diego County. Its staff defends the rights of children and youth in the foster-care system and frequently appears in dependency proceedings. It has an acute interest in the nature and scope of California dependency proceedings and in ensuring that dependents in the foster-care system have access to an appropriate judicial forum for their claims.

***East Bay Children's Law Offices***. East Bay Children's Law Offices protects and defends the rights of children and youth, including in dependency proceedings, through holistic, vigorous legal advocacy. Its lawyers are appointed by the dependency court in Alameda County and represent dependents at all stages of dependency procedures. Like the other amici, East Bay Children's Law Offices is deeply familiar with dependency proceedings and has a strong interest in ensuring access to justice for dependents.

***Dependency Legal Services***. Dependency Legal Services represents and advocates for indigent families in dependency proceedings in Marin, Placer, Solano, Sonoma, Stanislaus, and Yolo Counties. It offers high-quality representation, advocacy, and compassion for its appointed clients, and it shares with the other amici a strong interest in ensuring an appropriate forum for federal and constitutional claims of dependents in California's foster-care system.

***Law Foundation of Silicon Valley***.  The Law Foundation of Silicon Valley, through its Legal Advocates for Children & Youth Program, represents youth in dependency proceedings in Santa Clara County.  Its mission is to advance the legal rights of children and youth, empowering them to lead healthy and productive lives, and to advise and advocate for its clients to ensure their voices are heard and their rights are protected.

Amici offer this brief pursuant to the parties' stipulation (Dkts. 76, 77), and in order to address "legal issues that have potential ramifications beyond the parties directly involved" and offer " 'unique information or perspective that can help the court,' " *Safari Club Int'l v. Harris*, 2015 WL 1255491, at *1 (E.D. Cal. Jan. 14, 2015).

## II.   INTRODUCTION AND SUMMARY OF ARGUMENT

When a case is properly before a federal court, the court should resolve it on its merits.  That " 'virtually unflagging obligation,' " *Cook v. Harding*, 879 F.3d 1035, 1039 (9th Cir. 2018), ensures the steady application and development of federal law.  And when it comes to constitutional claims, that obligation is at its apex:  " 'wherever the Federal courts sit, human rights under the Federal Constitution are always a proper subject for adjudication.' "  *Id.* at 1040.

Defendants' motion to dismiss for lack of subject-matter jurisdiction (Dkt. 51; *see* Dkt. 62 (joinder)) defies those principles by asking the Court to reject this case before it has even begun.  That is an extraordinary request, and neither of the two arguments offered in support of that request comes close to justifying it.

First, this Court should not abstain from hearing Plaintiffs' claims under *Younger v. Harris*, 401 U.S. 37 (1971).  The story Defendants tell about *Younger* is incomplete as a matter of law and fact.  Legally, Defendants invoke a decades-old, and now defunct, approach to *Younger*, under which federal courts could decline to hear claims merely because they related to state proceedings or implicated state policy.  But the U.S. Supreme Court and Ninth Circuit have since rejected that lenient standard, emphasizing that *Younger* constitutes the narrowest of exceptions to federal jurisdiction.  And factually, Plaintiffs' claims—which present systemic challenges to the way Los

Angeles County's foster-care system works for transition-aged youth—do not fit *Younger*'s narrowed confines. Individual proceedings related to the placement and care of *dependents* in the foster-care system are distinct from quasi-criminal matters implicating abuse or neglect, and the loss of rights, of *parents*. And the systemic claims and relief at issue in Plaintiffs' suit are completely beyond the scope, and could never be resolved as a part, of individual dependency proceedings. That puts this case and others like it well beyond *Younger*, as courts across the country have held. And at a minimum, this Court should not order abstention at this early stage, before it "has even had the opportunity to sketch out potential contours of relief." *Jonathan R. ex rel. Dixon v. Justice*, 41 F.4th 316, 328 (4th Cir.), *cert. denied*, 143 S. Ct. 310 (2022).

Second, Defendants invoke cases like *Rizzo v. Goode*, 423 U.S. 362 (1976), arguing the Court could never award relief consistent with principles of federalism. That argument, too, loses sight of "th[e] early stage of the litigation." *Redd v. Guerrero*, 84 F.4th 874, 884 (9th Cir. 2023). If and when it comes to crafting relief, this Court can consider the "comity interests" Defendants invoke. *Jonathan R.*, 41 F.4th at 334. But that sort of equitable fine-tuning would come at the *end* of the case; it is not a reason to disqualify claims at the starting line. The alternative view Defendants urge—which "would deny all foster children all resort to federal courts" because, by definition, they remain "within the jurisdiction of state courts" until they depart foster care, *id.* at 334-35—is unthinkable as a matter of both constitutional doctrine and conscience.

### III.   ARGUMENT

**A.   Defendants have not shown that *Younger* abstention is appropriate.**

*Younger* abstention is "an extraordinary and narrow exception to the general rule that federal courts have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given." *Cook v. Harding*, 879 F.3d 1035, 1038 (9th Cir. 2018) (cleaned up). For three reasons, Defendants have not justified the extraordinary order they seek. First, binding precedent has narrowed the sorts of claims that even potentially trigger abstention, and Plaintiffs' claims are beyond that select few.

Second, it is absurd to suggest Plaintiffs can or should pursue their claims in individual dependency proceedings—a suggestion one court of appeals aptly rejected as "get[ting] federalism exactly backwards." *Jonathan R. ex rel. Dixon v. Justice*, 41 F.4th 316, 321 (4th Cir. 2022). Third, at a minimum, abstention is premature at this early stage.

### 1. Plaintiffs' claims do not fit the *Younger* framework.

For a time, *Younger* abstention was characterized by "steady expansion," as courts declined to resolve claims based on "the subject matter or the importance of the state interest" at issue. *Cook*, 879 F.3d at 1039. As part of that expansion, family-law cases were swept into *Younger*'s scope on the ground that they implicated state interests. *Id.*

Things changed in *Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69 (2013), which "stressed" that *Younger* abstention is appropriate only in narrow, "exceptional" circumstances. *Id.* at 73. The Ninth Circuit has called *Sprint* a "change[] [of] course" that placed "strict limitations" on *Younger*, clarifying that abstention in civil cases is limited to "civil enforcement proceedings" and "proceedings involving certain orders uniquely in furtherance of the state courts' ability to perform their judicial functions." *Cook*, 879 F.3d at 1039-40 (cleaned up); *accord, e.g.*, *Jonathan R.*, 41 F.4th at 328-29.

After *Sprint*, courts can no longer perform open-ended analysis and abstain under *Younger* in any case involving state proceedings on the ground that the proceedings "'implicate important state interests.'" *E.g.*, *Canatella v. California*, 404 F.3d 1106, 1109-10 (9th Cir. 2005). And "against that backdrop, 'the overwhelming majority of cases have rejected *Younger* abstention in similar lawsuits challenging foster care systems.'" *Jonathan R.*, 41 F.4th at 339 (collecting cases).

Defendants give short shrift to that doctrinal revolution. They assert that *Younger* is appropriate because all dependency proceedings "'are quasi-criminal enforcement actions subject to *Younger*,'" insofar as they "involve[] removal of a child due to abuse or neglect." Dkt. 51-1 at 11. But as courts have made clear, foster-care proceedings "are 'akin to a criminal prosecution'" only when they are "initiated to sanction the federal plaintiff." *Jeremiah M. ex rel. Nicolai v. Crum*, — F. Supp. 3d —, 2023 WL 6316631,

at *5 (D. Alaska Sept. 28, 2023), *appeal denied*, No. 23-2726 (9th Cir. Dec. 18, 2023). So *Younger* is in play in cases of the sort Defendants invoke—such as *Moore v. Sims*, 442 U.S. 415 (1979), and *Negrete v. Los Angeles County*, 2021 WL 2551595 (C.D. Cal. June 22, 2021)—in which parents are stripped of parental rights on grounds of abuse or neglect and invoke federal jurisdiction in an effort to regain control of their children.

But where "parents . . . are not parties," "[t]he absence of parties against whom criminal statutes would be enforced" makes a civil case implicating other features of the foster-care system "fundamentally dissimilar from" cases in *Younger*'s "quasi-criminal category." *Jeremiah M.*, 2023 WL 6316631, at *6; *see Applied Underwriters, Inc. v. Lara*, 37 F.4th 579, 589 (9th Cir. 2022) (no *Younger* where the absence of sanctions sought against the plaintiffs "belie any punitive character" to state proceedings). As the Fourth Circuit has explained, that distinction—between initial child-removal proceedings implicating parental rights and ongoing hearings "to protect the children who would be plaintiffs in federal court"—is paramount. *Jonathan R.*, 41 F.4th at 329-30.

That distinction tracks on-the-ground practice. Sometimes dependency courts resolve issues relating to parents' potentially criminal conduct. But much of their work is worlds away from anything criminal, "quasi" or otherwise. They focus instead on the work of reunifying families; of ensuring safe, productive placements for dependents in the meantime; and in seeing that vulnerable dependents under state responsibility receive the care, education, training, and protection they need to survive and thrive. And when dependency courts engage in work of that kind, they are not deciding issues with the procedural protections that accompany criminal and quasi-criminal matters. For most proceedings involving nonminor dependents, in fact, "hearings must be informal and nonadversarial," and "all parties must work collaboratively." Cal. R. Ct. 5.900(d)(2).

Plaintiffs' claims have nothing to do with criminal issues facing parents and everything to do with the work of the foster-care system facing dependents, in a context and environment far afield from anything resembling criminal law. Accepting Defendants' argument, then, would "bloat[] the meaning of 'quasi' in 'quasi-criminal'" beyond

recognition. *Jeremiah M.*, 2023 WL 6316631, at *6.

Defendants do not try to argue that this case fits within the only other *Younger* category for civil cases, namely that it "involv[es] the state's interest in enforcing its courts' orders," *Cook*, 879 F.3d at 1041—and for good reason. *Younger* is concerned with interference with "judicial functions," but it has never required deference when it comes to "'reviewing legislative or executive action.'" *Tinsley v. McKay*, 156 F. Supp. 3d 1024, 1035 (D. Ariz. 2015). And here, the complaint "targets only executive functions of Defendants' agencies, not the judicial functions of the juvenile courts." *Id.* So the systemic relief Plaintiffs seek would only "'aid the ongoing state proceedings in juvenile court, . . . not interfere with them.'" *Id.* (collecting cases); *accord, e.g.*, *Connor B. ex rel. Vigurs v. Patrick*, 771 F. Supp. 2d 142, 153-54 (D. Mass. 2011).

Defendants do, however, contend *Younger* is in play because the relief Plaintiffs seek "'would have the practical effect of enjoining . . . decisions of the juvenile court.'" Dkt. 51-1 at 12-16. That is doubly misguided. For one thing, "practical effect" does all the work in Defendants' assertion: unlike cases in which plaintiffs seek to reverse specific decisions state courts made, *e.g.*, *Wood v. Contra Costa County*, 2020 WL 1505717, at *1 (N.D. Cal. Mar. 30, 2023) (mother suing to challenge removal of children), Plaintiffs challenge executive policies *relevant to* their foster-care proceedings but not specific rulings that dependency courts made. For another, the cases Defendants invoke, such as *Laurie Q. v. Contra Costa County*, 304 F. Supp. 2d 1185 (N.D. Cal. 2004), and *31 Foster Children v. Bush*, 329 F.3d 1255 (11th Cir. 2003), are relics of the more free-wheeling era in which courts analyzed overlap with state proceedings without first ensuring the case involved one of the limited, exceptional circumstances for which *Younger* abstention is appropriate. *See Jonathan R.*, 41 F.4th at 332 & n.7 (distinguishing *31 Foster Children* and similar decisions on that basis).

Because this case does not fit any of *Younger*'s categories as the Supreme Court has clarified them, Defendants' abstention argument fails at the "'threshold.'" *ReadyLink Healthcare, Inc. v. State Comp. Ins. Fund*, 754 F.3d 754, 758 (9th Cir. 2014).

**2.  Plaintiffs could not press their claims in dependency proceedings.**

Moreover, *Younger* "do[es] not compel federal courts to refrain from hearing federal statutory and constitutional claims when the pending state proceeding is an inadequate or inappropriate forum for pursuing th[em]." *LaShawn A. ex rel. Moore v. Kelly*, 990 F.2d 1319, 1322 (D.C. Cir. 1993).  What matters, courts have explained, is not whether federal claims "'*might* be adjudicated'" in state proceedings, but whether they "'could *naturally* be resolved there'"—or whether instead state proceedings would be "'questionable vehicles at best'" for the claims.  *Id.* at 1322-23.

Forcing parties with claims like Plaintiffs' "to litigate their claims in . . . state foster-care proceedings would amount to . . . an empty promise" because the "wide-reaching, intertwined, and 'systemic' failures" they allege "cannot be remedied through piecemeal orders." *Jonathan R.*, 41 F.4th at 336-37.  Three features of dependency proceedings make them particularly ill suited to the adjudication of claims like Plaintiffs'.

*1. No systemic relief*.  Judges in dependency proceedings cannot order anything like the broader, systemic relief Plaintiffs seek.  As courts have put it, forcing litigants to try to reform the foster-care system on a case-by-case basis "would be like patching up holes in a sinking ship by tearing off the floorboards." *Jeremiah M.*, 2023 WL 6316631, at *8 (quoting *Jonathan R.*, 41 F.4th at 336).

The dependency docket is beyond overloaded.  Courts have thousands of active cases, so hearings must move quickly and rely on quick oral statements rather than comprehensive briefing.  For contested issues, the trial docket is similarly crowded; cases are set for trial months in advance and nearly always double-booked.  Bench trials can sometimes stretch on for several months, with a judge taking evidence a few hours at a time with long stretches in between.  No part of this system is suited to a sudden influx of structural constitutional claims requiring extensive briefing or discovery.

But the poor fit between dependency proceedings and claims like Plaintiffs' goes beyond resources.  Defendants argue dependency courts can "'order nearly any type of relief.'"  Dkt. 51-1 at 3.  The case they cite, however, makes clear that dependency courts

merely have authority to issue "relief regarding the care of *the* child" in a particular proceeding. *Laurie Q.*, 304 F. Supp. 2d at 1203 (emphasis added). The statutory authority Defendants invoke confirms as much, in that it supplies a grant of authority only as to "the child." Cal. Welf. & Inst. Code § 362. And in practice, too, dependency courts consider what relief is in the best interests of the dependent before them, but have neither authority nor institutional experience when it comes to issuing broader relief.

Defendants do not identify a single California dependency case involving broader relief, and amici are unaware of any. In *Jonathan R.*, the Fourth Circuit rejected *Younger* abstention in part because, although the state identified seven decisions in which it contended the juvenile court had ordered broader relief, in reality those decisions did not "offer[] the kind of systemic relief" the plaintiffs sought. 41 F.4th at 337-38. That the state identified just seven decisions over many years merely "signal[ed] the difficulty of bringing structural challenges during . . . periodic individual hearings." *Id.* at 337. Yet here, Defendants' request rests on an even flimsier foundation: they seek an order of abstention without identifying even *one* decision awarding broader relief.

True, dependency proceedings can sometimes involve "federal and constitutional claims." Dkt. 51-1 at 12. But what matters is what *kind* of claims are viable there. If a parent challenges the termination of parental rights—for instance, by arguing that a term in the statute that led to the termination is unconstitutionally vague—the dependency court can address the issue. *E.g.*, *Wood*, 2020 WL 1505717, at *8. But "when [courts] assess the adequacy of the state proceedings, [they] must measure them against" the claims the plaintiffs advance and the relief they seek—and here, as in *Jonathan R.* and other cases rejecting abstention, Plaintiffs are seeking "systemic changes" beyond the expertise and capacity of dependency courts. 41 F.4th at 336.

Structural litigation like Plaintiffs' is simply "not of a sort that would be presented during the normal course of" state dependency proceedings. *L.H. v. Jamieson*, 643 F.2d 1351, 1354 (9th Cir. 1981). In fact, anyone who showed up to dependency court with a complaint like Plaintiffs' would be greeted with confusion, if not derision.

***2. Distinct expertise***. The flip side of the coin is the work dependency courts *do* perform. They are specialized tribunals that deal with practical, human questions as much as legal ones. Dependency judges must address a dizzying array of personal issues when they review the wellbeing of dependents in foster care—including whether and how to maintain relationships among siblings, whether parents can contribute to educational decisions, options for postsecondary school or employment, and appropriate therapeutic treatment or sexual-health education. *E.g.*, Cal. Welf. & Inst. Code § 366. And judges must make these difficult decisions based on imperfect, constantly changing information, and often based on their assessment of the credibility and character of the people before them. *See Jonathan R.*, 41 F.4th at 335 (dependency hearings "zero in on the immediate circumstances in front of the court," such as whether the child is "being taught the skills that will enable her to successfully enter adulthood").

Recognizing the appropriateness of a federal forum in this case "does not asperse the 'competency' of state courts." *Jonathan R.*, 41 F.4th at 339; *accord Jeremiah M.*, 2023 WL 6316631, at *8. Rather, it acknowledges and protects the dependency court's specialized focus—and celebrates its expertise in resolving the deeply personal issues facing dependents in the foster-care system.

***3. No claim aggregation***. Dependency proceedings do not offer any meaningful way to resolve the claims of similarly situated minors, much less claims with county- or statewide implications, in one proceeding. And "acting alone, a foster child can hardly appreciate the universe of interrelated deficiencies that may plague the system." *Jonathan R.*, 41 F.4th at 337. It is thus unrealistic, to say the least, to expect individual dependents to have the time or resources to amass the evidence needed to seek systemic relief. *Id.* And even if dependents could shoulder that burden, the result would be that any number of individual judges would be asked to analyze similar arguments and evidence and potentially reach drastically different outcomes about county- and statewide issues. Determining whether the executive's policies comply with federal law and the Constitution should not be such a scattered, chaotic process.

Other features of the system similarly stand in the way of economies of scale. The funding organizations and attorneys receive in connection with representing dependents is on a case-by-case basis that does not translate to broader impact work. Organizations working in dependency court are often divided into many distinct firms for conflicts purposes, which further limits the extent to which attorneys representing individual clients can learn about and present evidence relating to broader issues. And it is particularly challenging for individual dependency lawyers to collect such broader information on their own because dependency hearings generally proceed under seal. *Jonathan R.*, 41 F.4th at 337; *see* Cal. Welf. & Inst. Code § 827.

Because individual suits would not provide any mechanism for similarly situated dependents to "allocate the costs" of litigation among them, the "only real choice is between a federal and a state class (or some other collective) action, not between a federal class action and . . . individual periodic hearings." *Jonathan R.*, 41 F.4th at 337. And adjudicating this case in federal court permits the important federal and constitutional questions presented in Plaintiffs' complaint to be resolved in presumptively public proceedings, which are "'an indispensable predicate to free expression about the workings of government.'" *Courthouse News Serv. v. Planet*, 947 F.3d 581, 589 (9th Cir. 2020).

### 3.    At a minimum, abstention is inappropriate at this stage.

Finally, there is "no reason to dismiss the case en masse before [this Court] has even had the opportunity to sketch out potential contours of relief." *Jonathan R.*, 41 F.4th at 328. Rather, if at any point the Court "determine[s] that certain specific relief would overstep *Younger*'s bounds, it can always reject it." *Id.* at 334; *accord id.* at 339.

Defendants' view of automatic, early abstention would have dramatic effects in this case and others. Because dependents in the foster-care system "are always within the jurisdiction of state courts," that view "would deny all foster children all resort to federal courts . . . merely 'because a pending state-court proceeding involves the same subject matter.'" *Jonathan R.*, 41 F.4th at 334-35 (quoting *Sprint*, 571 U.S. at 72). And it would do so based on only the *possibility* that some aspect of multifaceted claims

could affect state proceedings. "Fortunately, we do not run our judicial system on maybes and what-ifs." *Id.* at 331. This Court should, as have other courts before it, reject the "limitless theory of abstention" Defendants urge. *Id.* at 334-35.

### B. Defendants' objections about equitable relief are misguided and premature.

Defendants again swing for the fences by asking this Court to dismiss the entire case on the ground that the Court could never enter any form of appropriate injunctive relief. Dkt. 51-1 at 5-10. That argument, too, puts the cart before the horse.

Defendants invoke cases like *Rizzo v. Goode*, 423 U.S. 362 (1976), and *Lewis v. Casey*, 518 US. 343 (1996), to contend that Plaintiffs' grievances could never be redressed in federal court. Dkt. 51-1 at 6-7. But they neglect to mention that *Rizzo* and *Lewis* were decisions on review of injunctive relief that courts entered at the *end* of a case, after lengthy bench trials. Nothing in those cases suggests a court should dismiss a claim at the outset of a case on the ground that the court *could* be asked to award broad relief with federalism implications later on.

And binding case law precludes any such rule. The Ninth Circuit has rejected arguments like Defendants', explaining that "a 'systemwide violation' would justify 'systemwide relief'" even in cases involving important state interests. *Melendres v. Arpaio*, 784 F.3d 1254, 1263-64 (9th Cir. 2015) (rejecting reliance on *Lewis* and largely affirming permanent injunction involving policing). Federalism interests are relevant, of course—but only because they affect the way courts should "tailor" their remedies. *Id.* at 1267. Trial courts retain "a 'great deal of flexibility and discretion in choosing the remedy best suited to curing the violation,'" *Melendres v. Maricopa County*, 897 F.3d 1217, 1221 (9th Cir. 2018), and "federalism concerns" are just one part of the picture, *Gomez v. Vernon*, 255 F.3d 1118, 1128-30 (9th Cir. 2001). That is why the Ninth Circuit has rejected arguments like Defendants' at similarly "early stage[s] of the litigation." *Redd v. Guerrero*, 84 F.4th 874, 884 (9th Cir. 2023).

Courts have declined to dismiss similar cases challenging foster-care systems, preferring instead to leave questions of remedial tailoring until later in the case. *E.g.*,

*Jonathan R.*, 41 F.4th at 339. In *M.D. ex rel. Stukenberg v. Abbott*, 907 F.3d 237 (5th Cir. 2018), for instance, the Fifth Circuit affirmed some aspects of an injunction ordered in structural litigation challenging Texas's foster-care system but reined in other features the court deemed too far afield from any violations the district court found. *Id.* at 272-73. The Ninth Circuit, too, recognized the potential viability of equitable relief in a similar context, holding that youth in Arizona's foster-care system could seek classwide injunctive relief under Federal Rule of Civil Procedure 23(b)(2) against agencies that allegedly placed them at a risk of harm. *B.K. ex rel. Tinsley v. Snyder*, 922 F.3d 957, 971 (9th Cir. 2019), *cert. denied*, 140 S. Ct. 2509 (2020). As the court put it, the relief sought can always "'be given greater substance and specificity at an appropriate stage in the litigation through fact-finding, negotiations, and expert testimony.'" *Id.* at 972.

The correct approach here, then, is the one in *Wyatt B. ex rel. McAllister v. Brown*, 2021 WL 4434011 (D. Or. Sept. 27, 2021): the Court can "bear these considerations in mind as the case progresses" and, if Plaintiffs prevail, can refer to them "when it comes to crafting the scope of equitable relief." *Id.* at *6. But in the meantime, the Court should not sidestep its "'province and duty . . . to say what the law is.'" *Id.*

## IV.  CONCLUSION

The Court should reject Defendants' arguments in favor of premature dismissal and allow this case to proceed.

Dated: February 8, 2024

Respectfully submitted,
GIBSON, DUNN & CRUTCHER LLP

By: /s/ Matt Aidan Getz
    Matt Aidan Getz

*Counsel for Amici Curiae CASA of Los Angeles, Children's Legal Services of San Diego, East Bay Children's Law Offices, Dependency Legal Services, and Law Foundation of Silicon Valley*