UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV23-06921 JAK (Ex) | Date | 6/11/2024 |
|---|---|---|---|
| Title | Ocean S., et al. v. Los Angeles County, et al. | | |

| Present: The Honorable | JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE |
|---|---|
| T. Jackson | Not Present |
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiff: | Attorneys Present for Defendant: |
| Not Present | Not Present |

Proceedings:     **(IN CHAMBERS) ORDER RE COUNTY DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT JURISDICTION (DKT. 51);**

**COUNTY'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM (DKT. 52);**

**DEPARTMENTS AND DIRECTORS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM (DKT. 53);**

**DEPARTMENTS AND DIRECTORS' JOINDER IN COUNTY'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM (DKT. 54);**

**CALIFORNIA DEPARTMENT OF HEALTH CARE SERVICES AND DIRECTOR MICHELLE BAASS' MOTION TO DISMISS (DKT. 48);**

**CALIFORNIA DEPARTMENT OF SOCIAL SERVICES AND DIRECTOR KIM JOHNSON'S MOTION TO DISMISS (DKT. 50)**

**CALIFORNIA HEALTH AND HUMAN SERVICES AGENCY AND SECRETARY MARK GHALY'S MOTION TO DISMISS AND JOINDER (DKT. 49); AND**

**MOTION FOR LEAVE TO FILE AMICUS BRIEF (DKT. 96)**

I.     <u>Introduction</u>

On August 22, 2023, six persons, on behalf of themselves and others similarly situated ("Plaintiffs"), brought this action against Los Angeles County as well as certain government entities and officials responsible for administering and supervising the County's child welfare system and Medicaid program ("Defendants"). Dkt. 1. On September 21, 2023, Plaintiffs filed a First Amended Complaint ("FAC"). Dkt. 21. The Named Plaintiffs are Erykah B., Onyx G., Rosie S., Jackson K., Ocean S., Junior R. and Monaie T. *Id.* at 1. The County Defendants are Los Angeles County (the "County"); the County Department of Children and Family Services ("DCFS") and Brandon Nichols, who is the Director of DCFS; and the Department of Mental Health ("DMH") and Lisa Wong, who is the Director of DMH. *Id.* at 2. The State Defendants are the California Department of Social Services ("CDSS") and Kim Johnson, who is the Director of CDSS ("Director Johnson"); the California Department of Health Care Services ("DHCS") and Michelle Baass, who is the Director of DHCS ("Director Baass"); and the California Health and Human Services Agency ("CalHHS") and Mark Ghaly, who is the Secretary of CalHHS ("Secretary Ghaly"). *Id.* On February 9, 2024, Brandon Nichols and Lisa Wong were voluntarily dismissed as defendants. Dkt. 82.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV23-06921 JAK (Ex) | Date | 6/11/2024 |
| Title | Ocean S., et al. v. Los Angeles County, et al. | | |

The FAC advances seven causes of action: (1) violation of the Adoption Assistance and Child Welfare Act of 1980, 42 U.S.C. § 670 et seq. (the "AACWA Claim"); (2) violation of substantive due process under the Fourteenth Amendment to the U.S. Constitution (the "Substantive Due Process Claim"); (3) violation of procedural due process under the Fourteenth Amendment to the U.S. Constitution (the "Procedural Due Process Claim"); (4) violation of section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(b) (the "Section 504 Claim"); (5) violation of the American with Disabilities Act of 1990, 42 U.S.C. § 12102 et seq. (the "ADA Claim"); (6) violation of the rights to freedom of familial association and privacy under the First and Fourteenth Amendments to the U.S. Constitution (the "Familial Association Claim"); and (7) violation of the Early and Periodic Screening, Diagnostic and Treatment ("EPSDT") provisions of the Medicaid Act, 42 U.S.C. §§ 1396a(a)(10)(A); id. §§ 1396a(43)(C), 1396d(a)(4)(B), 1396d(r) (the "Medicaid Act Claim"). Dkt. 21 ¶¶ 290–355. The first, second, third, sixth and seventh causes of action are brought under 42 U.S.C. § 1983 (the "1983 Claims").

On November 29, 2023, Defendants filed several motions to dismiss (the "MTDs"). The County Defendants filed a motion to dismiss for lack of subject matter jurisdiction (the "County SMJ MTD"). Dkt. 51. Plaintiffs opposed the motion (the "County SMJ Opposition" (Dkt. 66)), and the County filed a reply (the "County SMJ Reply" (Dkt. 90)).

The County also filed a motion to dismiss for failure to state a claim (the "County 12(b)(6) MTD"). Dkt. 52. Plaintiffs opposed the motion (the "County 12(b)(6) Opposition" (Dkt. 67)), and the County filed a reply (the "County 12(b)(6) Reply" (Dkt. 91)). In support of its motion, the County filed a Request for Judicial Notice (the "RJN"). Dkt. 52-2. Plaintiffs opposed the RJN (the "RJN Opposition"). Dkt. 70.

DCFS and DMH (collectively, the "Departments") joined in the County 12(b)(6) MTD (the "Department Joinder"). Dkt. 54. The Departments also filed a motion to dismiss (the "Department MTD"). Dkt. 53. Plaintiffs opposed the motion (the "Department Opposition" (Dkt. 69)), and the Departments filed a reply (the "Department Reply" (Dkt. 92)).

CDSS and Director Johnson (collectively, "CDSS") filed a motion to dismiss (the "CDSS MTD"). Dkt. 50. Plaintiffs opposed the motion (the "CDSS Opposition" (Dkt. 68)), and CDSS filed a reply (the "CDSS Reply" (Dkt. 89)).

DHCS and Director Baass (collectively, "DHCS") filed a motion to dismiss (the "DHCS MTD"). Dkt. 48. Plaintiffs opposed the motion (the "DHCS Opposition" (Dkt. 71)), and DHCS filed a reply (the "DHCS Reply" (Dkt. 87)).

CalHHS and Secretary Ghaly (collectively, "CalHHS") joined in the CDSS and DHCS MTDs and filed a separate motion to dismiss (the "CalHHS MTD"). Dkt. 49. Plaintiffs opposed the motion (the "CalHHS Opposition" (Dkt. 72)), and CalHHS filed a reply (the "CalHHS Reply" (Dkt. 88)).

On February 8, 2024, CASA of Los Angeles filed an amicus brief in support of Plaintiffs (the "CASA Amicus Brief" (Dkt. 79)), as did the Family Violence Appellate Project (the "FVAP Amicus Brief" (Dkt. 80)). The County Defendants responded to the CASA Amicus Brief (the "County Response to CASA" (Dkt. 98)) as well as the FVAP Amicus Brief (the "County Response to FVAP" (Dkt. 99)). CDSS also responded to the FVAP Amicus Brief (the "CDSS Response to FVAP" (Dkt. 97)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV23-06921 JAK (Ex) | Date | 6/11/2024 |
| Title | Ocean S., et al. v. Los Angeles County, et al. | | |

On March 5, 2024, the California State Association of Counties filed a motion for leave to file an amicus brief in support of Defendants (the "CSAC Motion"). Dkt. 96. The State Defendants filed a statement of non-opposition to the CSAC Motion (the "State Non-Opposition to CSAC"). Dkt. 101.

A hearing on the MTDs was held on April 10, 2024, and the motions were taken under submission. For the reasons stated in the Order, the MTDs are **GRANTED IN PART** and **DENIED IN PART**.

II.    **Background**

    A.    The Parties

        1.    Plaintiffs

It is alleged Plaintiffs are foster youth between the ages of 16 and 21 ("transition age foster youth") who have been deprived of meaningful access to housing, mental health and other necessary services. Dkt. 21 ¶ 1. It is further alleged that Plaintiffs and other transition age foster youth have experienced significant trauma in connection with the foster care system, including separation from their families, loss of community and physical, emotional and sexual abuse. *Id.* ¶ 3.

It is alleged that a disproportionately high percentage of these youth have mental health and other disabilities related to chronic, ongoing interpersonal trauma; it is also alleged that some are now young parents who seek health, stability and safety for themselves and their families. *Id.* It is alleged that the Named Plaintiffs as well as the vast majority of the County's foster youth come from low-income communities of color. *Id.* ¶¶ 3, 16–22.

The FAC seeks certification of the following class and three subclasses: (1) a "General Class" including all transition age foster youth who are or will be in extended foster care in the County; (2) an "ADA Subclass" including all members of the General Class with mental impairments due to mental health conditions that substantially limit a major life activity; (3) a "Medicaid Subclass" including all members of the General Class who are eligible for specialty mental health services and for whom the service is needed to ameliorate a mental health condition; and (4) an "Expecting and Parenting Subclass" including all members of the General Class who are pregnant and/or parenting. *Id.* ¶ 281.

The FAC alleges that all the Named Plaintiffs have suffered harms caused by violations of law, and that these are the same as those experienced by the putative General Class. *Id.* ¶ 287. It is alleged that all the Named Plaintiffs also have claims that are typical of claims of the ADA and Medicaid Subclasses. *Id.* It is alleged that Plaintiffs Rosie S., Ocean S. and Monaie T. have claims that are typical of claims of the Expecting and Parenting Subclass. *Id.*

        2.    Defendants

It is alleged that Defendants are responsible for providing care and Medicaid services to foster youth, including transition planning, housing, developmental, educational and health services. *Id.* ¶ 2. In fulfilling these responsibilities, it is alleged, Defendants must provide foster youth with safe, stable and appropriate placements that are free from physical, psychological and emotional harm. *Id.* It is alleged

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV23-06921 JAK (Ex) | Date | 6/11/2024 |
|---|---|---|---|
| Title | Ocean S., et al. v. Los Angeles County, et al. | | |

that Defendants' failures to meet these legal duties have created a pipeline for those in the foster care system to those who live on the margins of society. *Id.* ¶ 4.

With respect to the County Defendants, it is alleged that the County is a local government entity that oversees and monitors DCFS and DMH. *Id.* ¶ 23. It is alleged that DCFS is responsible for administering foster care services in the County, providing placements for youth in the foster care system and ensuring the safety and wellbeing of children under court supervision. *Id.* ¶ 24. It is alleged that DMH is responsible for providing behavioral health services to transition age foster youth in Los Angeles, including necessary specialty mental health services. *Id.* ¶ 26.

With respect to the State Defendants, it is alleged that CDSS, which is led by Director Johnson, is the "single state agency" responsible for supervising and monitoring California's foster care system. *Id.* ¶¶ 30–31. It is alleged that DHCS, which is led by Director Baass, is the "single state agency" responsible for administering California's Medicaid program. *Id.* ¶¶ 32–33. Finally, it is alleged that CalHHS, which is led by Secretary Ghaly, is responsible for overseeing and monitoring CDSS and DHCS. *Id.* ¶¶ 28–29.

    B.    The Allegations

It is alleged that Erykah B. first entered foster care when she was an infant. *Id.* ¶ 36 It is alleged that, in 2012, she was removed from her mother for the final time and placed with the person who would become her legal guardian after reunification services for her parents were terminated. *Id.* It is alleged that, although Erykah B. told DCFS she did not want to be placed in that home, DCFS failed to listen, and the placement resulted in abuse and neglect. *Id.* It is alleged that Erykah B. survived one attempted sexual assault in her last foster home and another while she was homeless. *Id.* ¶ 38. It is alleged that she was unable to seek support from DCFS because she feared that doing so would adversely affect her placement. *Id.* It is further alleged that Erykah B.'s traumatic childhood has led to depression and post-traumatic stress disorder ("PTSD"), as well as attempted suicide. *Id.* ¶ 43.

It is alleged that Onyx G. experienced abuse and neglect while being cycled by DCFS between family member placements. *Id.* ¶ 48. It is also alleged that, by the time DCFS removed Onyx G. from her parents' custody in 2020, she had been hospitalized for suicidal ideation and had received inpatient psychiatric services 17 times. *Id.* It is alleged that Onyx G. has been diagnosed with anxiety, major depressive disorder and disruptive mood dysregulation disorder. *Id.* ¶ 49. It is further alleged that Onyx G. was repeatedly harassed and sexually assaulted after being placed by DCFS in a Short Term Residential Therapeutic Program ("STRTP"). *Id.* ¶¶ 50–52.

It is alleged that Rosie S. is the parent of a newborn child, and that she has been in the foster care system since 2011. *Id.* ¶ 62. It is alleged that Rosie S. contacted DCFS to reenter extended foster care in 2022, but DCFS failed to offer her an appropriate placement. *Id.* ¶ 66. It is alleged that Rosie was uninsured due to DCFS's failure to transfer her Medicaid coverage to her Supervised Independent Living Placement ("SILP") in Nevada. *Id.* ¶ 62. It is also alleged that Rosie S. was initially denied acceptance into a Transitional Housing Placement Program for Nonminor Dependents ("THPP-NMD") due to DCFS's failure to submit her applications on time. *Id.* ¶ 70. It is alleged that Rosie S. has been diagnosed with major depressive disorder, anxiety, trichotillomania and mood disorders. *Id.* ¶ 72.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV23-06921 JAK (Ex) | Date | 6/11/2024 |
|---|---|---|---|
| Title | Ocean S., et al. v. Los Angeles County, et al. | | |

It is alleged that Jackson K. entered foster care in 2007, and was adopted in 2009. *Id.* ¶ 76. It is also alleged that American Sign Language ("ASL") is his primary language. *Id.* ¶ 74. It is alleged that after Jackson K. was forced to leave home by his adoptive father in 2022, he was involuntarily sent to a psychiatric hospital because the police lacked sufficient ASL interpreters. *Id.* ¶¶ 78, 80. It is further alleged that he was forced to complete THPP-NMD applications without an interpreter and was repeatedly denied acceptance by THPP-NMDs because of DCFS's characterization of him as behaviorally challenged. *Id.* ¶ 81.

It is alleged that Ocean S. experienced abuse and neglect at an early age, that she has a history of sexual trauma and has been diagnosed with mood disorders, insomnia, PTSD and major depression. *Id.* ¶¶ 89–90. It is alleged that DCFS failed to address Ocean S.'s placement needs as a pregnant and parenting youth. *Id.* ¶ 92. It is alleged that after she was physically assaulted by her-then partner, her THPP-NMD placement was terminated and DCFS failed to offer her an alternate one. *Id.* ¶¶ 95–97. It is further alleged that DCFS treated her as defiant instead of treating her with the trauma-responsive care she required. *Id.* ¶¶ 101–02.

It is alleged that Junior R. has cycled through several STRTPs since reentering foster care in 2018. *Id.* ¶ 106. It is alleged that Junior R. was forced to leave a housing program without adequate notice or opportunity to contest his removal. *Id.* ¶ 108. It is alleged that DCFS failed to offer Junior R. an appropriate placement after learning he was unhoused and threatened to close his dependency case if he did not resume work or school soon, despite his homelessness. *Id.* ¶¶ 109–10. It is alleged that Junior R. was threatened with physical harm after DCFS returned him to his grandmother's care in 2023, and that DCFS did so notwithstanding that her legal guardianship had been terminated years earlier. *Id.* ¶ 111. It is further alleged that Junior R. has been diagnosed with depression, anxiety and attention deficit hyperactivity disorder. *Id.* ¶ 112. It is alleged that the instability of his placement has also caused him to experience panic attacks and suicidal ideation. *Id.*

It is alleged that Monaie T. reentered foster care in 2016 due to physical abuse by both her parents. *Id.* ¶ 120. It is alleged that Monaie T. struggled with homelessness after her infant son died in 2018 and her daughter was born in 2019. *Id.* ¶¶ 121–24. It is further alleged that DCFS knew that Monaie T. needed trauma-responsive treatment, but failed to ensure that she would receive the necessary services. *Id.* ¶ 126.

      C.     Requested Relief

The FAC seeks declaratory relief, injunctive relief and an award of attorney's fees and costs. *Id.* at 108–09. The FAC seeks preliminary and permanent injunctive relief to correct the aforementioned, alleged systemic failures to ensure the following: (1) a "minimally adequate placement array" such that class members have access to safe and stable placements at all times; (2) that class members receive adequate notice and due process after any denial of placement or removal from placement; (3) that class members receive mandated case plans and transition plans; (4) that Defendants provide ADA Subclass members an adequate range of placements and services in the most integrated, least restrictive setting appropriate to their needs; (5) that the Named Plaintiffs, ADA Subclass members and Medicaid Subclass members receive the Medicaid services to which they are entitled; and (6) that Defendants do not violate the right of Expecting and Parenting Subclass members to familial association. *Id.* at 108.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV23-06921 JAK (Ex) | Date | 6/11/2024 |
|---|---|---|---|
| Title | Ocean S., et al. v. Los Angeles County, et al. | | |

### III.    Legal Standards

A.    Motion to Dismiss under Fed. R. Civ. P. 12(b)(1)

A motion to dismiss under Fed. R. Civ. P. 12(b)(1) is premised on the claim that the court lacks subject matter jurisdiction. *See, e.g.*, *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039–40 (9th Cir. 2003). Because federal courts are courts of limited jurisdiction, "[a] federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." *Stock W., Inc. v. Confederated Tribes*, 873 F.2d 1221, 1225 (9th Cir. 1989) (citation omitted). "Article III of the Constitution confines the judicial power of federal courts to deciding actual 'Cases' or 'Controversies.' " *Hollingsworth v. Perry*, 570 U.S. 693, 704 (2013). "[T]he core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (citation omitted). Thus, if a plaintiff lacks standing under Article III, the action must be dismissed for lack of subject matter jurisdiction. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 109–10 (1998); *accord Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011).

A party may challenge subject matter jurisdiction under Rule 12(b)(1) by referring to the face of the pleadings or by presenting extrinsic evidence. *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000) ("Rule 12(b)(1) jurisdictional attacks can be either facial or factual."). In a facial challenge, the moving party asserts that the allegations of a complaint are insufficient to establish federal jurisdiction. *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). Courts must accept the allegations of the complaint as true in considering such a challenge, *i.e.*, facial attacks are reviewed under the same standard as a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *See Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014). "By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air*, 373 F.3d at 1039. In evaluating a factual challenge, the district court may "review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Id.*

B.    Motion to Dismiss under Fed. R. Civ. P. 12(b)(6)

Fed. R. Civ. P. 8(a)(2) provides that a "pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." The complaint must allege facts that, if established, would be sufficient to show that a claim for relief is plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The complaint need not include detailed factual allegations, but it must provide more than a "formulaic recitation of the elements of a cause of action." *Id.* at 555. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556–57).

Pursuant to Fed. R. Civ. P. 12(b)(6), a party may move to dismiss for failure to state a claim. Granting a motion to dismiss is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support one. *See Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). In considering a motion to dismiss, the allegations in the challenged complaint are deemed true and must be construed in the light most favorable to the non-moving party. *See Cahill v. Liberty Mut.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV23-06921 JAK (Ex) | Date | 6/11/2024 |
| Title | Ocean S., et al. v. Los Angeles County, et al. | | |

*Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). However, a court need not "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit. Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

If a motion to dismiss is granted, the court should "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). This policy is to be applied "with extreme liberality." *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001) (quoting *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990)). However, allowing leave to amend is inappropriate in circumstances where litigants have failed to cure previously identified deficiencies, or where an amendment would be futile. *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *Allen v. City of Beverly Hills*, 911 F.2d 367, 374 (9th Cir. 1990).

## IV.    **Application**

A.    County SMJ MTD

The County Defendants seek to dismiss the action for lack of subject matter jurisdiction on two grounds: (1) *Younger* abstention requires dismissal; (2) Plaintiffs lack Article III standing because their alleged injuries are not redressable. Dkt. 51-1 at 12–25.

1.    *Younger* Abstention

The County Defendants argue that abstention is required under *Younger v. Harris*, 401 U.S. 37 (1971), because "[a]ny relief a federal court might grant in a foster care lawsuit--particularly in one seeking an injunction--is inextricably intertwined with determinations that must be (and ordinarily have been) made by juvenile courts in state dependency proceedings." *Id.* at 18.

Plaintiffs respond that "Plaintiffs' dependency hearings do not fall into the narrow category of cases to which *Younger* abstention may apply" and because they could not seek similar "systemic reforms" in their dependency proceedings. Dkt. 66 at 21. Plaintiffs further argue that, because the FAC seeks "injunctive relief directed at the policies and practices of state and county executive agencies overseeing and administering placement and supportive services for transition age foster youth," these remedies would not "interfer[e] with the administration of the juvenile courts." *Id.* at 27.

a)    Legal Standards

"*Younger* abstention is a jurisprudential doctrine rooted in overlapping principles of equity, comity, and federalism." *Arevalo v. Hennessy*, 882 F.3d 763, 765 (9th Cir. 2018) (citation omitted). "*Younger v. Harris* . . . and its progeny espouse a strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances." *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 431 (1982). In civil cases, "*Younger* abstention is appropriate only when the state proceedings: (1) are ongoing, (2) are quasi-criminal enforcement actions or involve a state's interest in enforcing the orders and judgments of its courts, (3) implicate an important state interest, and (4) allow litigants to raise federal challenges." *ReadyLink Healthcare, Inc. v. State Comp.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV23-06921 JAK (Ex) | Date | 6/11/2024 |
|---|---|---|---|
| Title | Ocean S., et al. v. Los Angeles County, et al. | | |

*Ins. Fund*, 754 F.3d 754, 759 (9th Cir. 2014).

If those "threshold requirements" are met, the court must then "consider whether the federal action would have the practical effect of enjoining the state proceedings and whether an exception to *Younger* applies." *Id.* (citing *Gilbertson v. Albright*, 381 F.3d 965, 978 (9th Cir. 2004) (en banc)). "*Younger* principles apply to actions at law as well as for injunctive or declaratory relief because a determination that the federal plaintiff's constitutional rights have been violated would have the same practical effect as a declaration or injunction on pending state proceedings." *Gilbertson*, 381 F.3d at 978.

                b)        Analysis

The County Defendants argue that the threshold requirements for *Younger* abstention are met because: (1) "every youth in foster care has a pending juvenile court proceedings"; (2) "juvenile dependency cases are quasi-criminal enforcement actions subject to *Younger*"; (3) "dependency proceedings implicate important state interests"; and (4) "federal and constitutional claims may be raised in dependency proceedings." Dkt. 51-1 at 18–19. Plaintiffs respond that "review hearings in dependency proceedings are not criminal or quasi-criminal proceedings under the *Younger* abstention analysis." Dkt. 66 at 22.

The County Defendants rely on *Moore v. Sims*, 442 U.S. 415 (1979), in which two parents and their minor children brought an action in federal court to challenge the constitutionality of a Texas statute permitting the temporary removal of children from their homes following allegations of child abuse. *See id.* at 418–19. The Court held that the district court should have abstained under *Younger* because "the State here was a party to the state proceedings, and the temporary removal of a child in a child-abuse context is . . . , 'in aid of and closely related to criminal statutes.' " *Id.* at 423 (quoting *Huffman v. Pursue, Ltd.*, 420 U.S. 592 (1975)). The County Defendants contend that *Moore* stands for the proposition that *all* dependency proceedings are quasi-criminal because they "concern the welfare of children." Dkt. 90 at 9. Accordingly, the County Defendants conclude, *Younger* abstention applies to both "lawsuits by parents challenging removal" and "lawsuits by children challenging the foster care system." *Id.* at 8–9.

As Plaintiffs argue, the Supreme Court has since reiterated the narrow bounds of *Younger* abstention. Dkt. 66 at 23 n.4. In *Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69 (2013), the Court held that *Younger* abstention is "exceptional," explaining that as a "general rule," the "pendency of an action in a state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *Id.* at 73. The Court clarified that *Younger* abstention applies only to three types of proceedings: (1) "ongoing state criminal prosecutions"; (2) "civil enforcement proceedings"; and (3) "civil proceedings involving certain orders uniquely in furtherance of the state courts' ability to perform their judicial functions." *Id.* at 78 (cleaned up). It then explained that civil enforcement proceedings are "characteristically initiated . . . by the State in its sovereign capacity" following a "preliminary investigation and complaint." *Id.* at 79–80.

Following *Sprint*, the Seventh Circuit relied on *Moore v. Sims* to conclude that "*Younger* applies to state-initiated child-welfare litigation." *Ashley W. v. Holcomb*, 34 F.4th 588, 591 (7th Cir. 2022). The Fourth Circuit reached a different outcome. It concluded that periodic foster care hearings, which usually "involve approving foster-care plans, ordering payments for medical or mental-health services,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV23-06921 JAK (Ex) | Date | 6/11/2024 |
|---|---|---|---|
| Title | Ocean S., et al. v. Los Angeles County, et al. | | |

affirming out-of-state transfers, and generally ensuring the children's placements continue to be in their best interest," are not quasi-criminal proceedings. *Jonathan R. by Dixon v. Justice*, 41 F.4th 316, 331 (4th Cir. 2022). The Fourth Circuit explained that, although *Moore* involved an "*initial* child-removal proceeding . . . initiated to sanction the federal plaintiff"--the abusive parents--the "*ongoing* individual hearings here serve to protect the children who would be plaintiffs in federal court." *Id.* at 329–30 (citation omitted). Therefore, the Fourth Circuit concluded, "[i]t would turn decades of Supreme-Court jurisprudence--and logic--on its head to put these foster children in the shoes of the abusive parents in *Moore.*" *Id.*

The County Defendants argue that "[d]ependency proceedings in California are quasi-criminal in nature" because, under California law, "removal is one component of a singular dependency proceeding governed by a unitary statutory scheme, where concerns of abuse or neglect are part of an indivisible, ongoing conversation about the child's welfare." Dkt. 90 at 10. Plaintiffs respond that they "do not challenge or seek to enjoin or otherwise interfere with the Dependency Court's determinations." Dkt. 21 ¶ 276. Plaintiffs argue that they do not challenge the initial removal decision or the initial custody decision. Instead, Plaintiffs state that they "challenge the unlawful systemic practices of Defendants, practices that the Dependency Court is incapable of remedying." *Id.*

That an initial removal hearing necessarily precedes hearings in a juvenile court proceeding does not compel the conclusion that the entire dependency proceeding is a quasi-criminal action. *See, e.g.*, *Tinsley v. McKay*, 156 F. Supp. 3d 1024, 1034 (D. Ariz. 2015) (*Younger* abstention does not apply to "ongoing dependency proceedings" where the "animating purpose . . . is to plan for and monitor the development and well-being of children, not to investigate or penalize those who might have contributed to their dependency."); *Jeremiah M. v. Crum*, No. 22-CV-00129-JMK, 2023 WL 6316631, at *6 (D. Alaska Sept. 28, 2023) ("*Moore* and its progeny do not suggest that, if the initiation of a state proceeding is considered an act of civil enforcement, a state court's continuing oversight of one of the parties affected by that enforcement--here, the foster children--continues to bear the 'enforcement' label."). To hold otherwise would conflict with the rule that *Younger* extends "no further" than the "three 'exceptional circumstances' " described above. *Sprint*, 571 U.S. at 79.

The County Defendants do not argue that the pending juvenile court proceedings are within *Younger*'s third category for "civil proceedings involving certain orders uniquely in furtherance of the state courts' ability to perform their judicial functions." *Id.* at 78 (cleaned up). Further, the Ninth Circuit and other courts have rejected similar arguments. *See, e.g.*, *Cook v. Harding*, 879 F.3d 1035, 1041 (9th Cir. 2018) (rejecting the argument that *Younger* requires abstention from constitutional "challenges to parentage determinations" because "the state's interest in its interrelated family laws . . . does not relate to the state courts' ability to enforce compliance with judgments already made"); *Jonathan R.*, 41 F.4th at 331 (rejecting the argument that periodic foster care hearings "further 'the state courts' ability to perform their judicial function' of overseeing compliance with their initial orders in the abuse-and-neglect case" because then any "party resisting federal litigation would always be able to claim that future state orders might be necessary to 'oversee[ ] compliance' with initial ones and that any parallel federal litigation might inhibit state authority to do so"); *Tinsley*, 156 F. Supp. 3d at 1035–44 (similar); *Jeremiah M.*, 2023 WL 6316631, at *7 (same).

Because the claims advanced in this action are not within either of the civil categories identified in *Younger*, abstention is not appropriate. Therefore, the County SMJ MTD is **DENIED** on this ground.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV23-06921 JAK (Ex) | Date | 6/11/2024 |
| Title | Ocean S., et al. v. Los Angeles County, et al. | | |

2.    Article III Standing

The County Defendants argue that the FAC asserts "broad and generalized grievances" that "are not the kind that a federal court can redress." Dkt. 51 at 13. Because the foster care system is "specially and uniquely entrusted to state and local governments," the County Defendants contend that, "Plaintiffs' claimed injury is not redressable via federal injunction." *Id.* at 17.

Plaintiffs respond that "[t]he Ninth Circuit has consistently found plaintiffs meet the redressability requirement in civil rights actions similar to this one," and this "approach is consistent with decades of court decisions from around the country that have ordered injunctive relief to address the types of systemic failures alleged here." Dkt. 66 at 18.

a)    Legal Standards

"Article III of the Constitution confines the judicial power of federal courts to deciding actual 'Cases' or 'Controversies.' " *Hollingsworth*, 570 U.S. at 704. "[T]he core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan*, 504 U.S. at 560 (citation omitted). "[T]o satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000) (citing *Lujan*, 504 U.S. at 560–61). A plaintiff who seeks prospective injunctive relief must show a "real or immediate threat that the plaintiff will be wronged again." *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983).

"Redressability requires an analysis of whether the court has the power to right or prevent the claimed injury." *Republic of Marshall Islands v. United States*, 865 F.3d 1187, 1199 (9th Cir. 2017). A plaintiff's burden to demonstrate redressability is "relatively modest." *Renee v. Duncan*, 686 F.3d 1002, 1013 (9th Cir. 2012) (quoting *Bennett v. Spear*, 520 U.S. 154, 171 (1997)). To establish redressability, a plaintiff must show that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 561. "If, however, a favorable judicial decision would not require the defendant to redress the plaintiff's claimed injury, the plaintiff cannot demonstrate redressability, unless she adduces facts to show that the defendant or a third party are nonetheless likely to provide redress as a result of the decision." *M.S. v. Brown*, 902 F.3d 1076, 1083 (9th Cir. 2018) (citations omitted). There is similarly "no redressability if a federal court lacks the power to issue such relief." *Id.*

"Where, as here, a case is at the pleading stage, the plaintiff must 'clearly . . . allege facts demonstrating' each element." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)). "[A] plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Town of Chester v. Laroe Ests., Inc.*, 581 U.S. 433, 439 (2017) (citation omitted).

Although the Supreme Court has left open the "the distinct question whether every class member must demonstrate standing before a court certifies a class," *TransUnion LLC v. Ramirez*, 594 U.S. 413 n.4

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV23-06921 JAK (Ex) | Date | 6/11/2024 |
|---|---|---|---|
| Title | Ocean S., et al. v. Los Angeles County, et al. | | |

(2021), it "has long recognized that in cases seeking injunctive or declaratory relief, only one plaintiff need demonstrate standing to satisfy Article III." *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 682 n.32 (9th Cir. 2022) (citing *Baggett v. Bullitt*, 377 U.S. 360, 366 n.5 (1964); *Rumsfeld v. F. for Acad. & Institutional Rts., Inc.*, 547 U.S. 47, 52 n.2 (2006); *Horne v. Flores*, 557 U.S. 433, 446–47 (2009)). Consistent with this analysis, the Ninth Circuit has held that where a putative class seeks injunctive relief, *see id.*, "standing is satisfied if at least one named plaintiff meets the requirements." *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (en banc).

> b)    Analysis

The County Defendants argue that each of the Named Plaintiffs must establish standing for each claim and each form of relief sought. Dkt. 90 at 4. That is not persuasive. Because Plaintiffs seek the same injunctive relief for the entire putative class, "the interests of [all the Named Plaintiffs]" would be "fully protected by a judgment in favor of [any individual Named Plaintiff]." *Baggett*, 377 U.S. at 366 n.5. Therefore, at this stage, "only one plaintiff need demonstrate standing to satisfy Article III." *Olean*, 31 F.4th at 682 n.32.

"[O]nce the named plaintiff demonstrates her individual standing to bring a claim, the standing inquiry is concluded, and the court proceeds to consider whether the Rule 23(a) prerequisites for class certification have been met." *B.K. by next friend Tinsley v. Snyder*, 922 F.3d 957, 967 (9th Cir. 2019) (quoting *Melendres v. Arpaio*, 784 F.3d 1254, 1262 (9th Cir. 2015)). Any differences between individual plaintiffs "are relevant only to class certification, not to standing." *Id.* Further, because "[t]he objection that a federal court lacks subject-matter jurisdiction . . . may be raised . . . at any stage in the litigation," *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006), the County Defendants may renew their challenge as to the Article III standing of each Named Plaintiff after the anticipated class certification motion is decided.

> (1)    <u>Individual Causes of Action</u>

> (a)    AACWA Claim

With respect to the AACWA Claim, the FAC alleges that Defendants have deprived Plaintiffs of their statutory rights under AACWA due to the following: (1) failing to provide legally compliant case plans; and (2) failing to ensure a case review system that includes a legally compliant transition plan. Dkt. 21 ¶ 291. For example, it is alleged that Rosie S. was forced to find herself a placement in Nevada, away from her limited support systems in Los Angeles County, due to Defendants' lack of appropriate case planning. *Id.* ¶¶ 66–68. To remedy these alleged violations, the FAC seeks an injunction that would require Defendants to "correct systemic failures resulting in class members not receiving mandated case plans and transition plans." *Id.* at 108.

> (b)    Substantive Due Process Claim

As to the Substantive Due Process Claim, the FAC alleges that Defendants have deprived Plaintiffs of their constitutional rights due to the following: (1) failing to provide a minimally adequate array of safe and stable placements; (2) failing to identify sufficient emergency housing options for youth transitioning between placements or reentering care; (3) affirmatively issuing standards and policies that undermine

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV23-06921 JAK (Ex) | Date | 6/11/2024 |
|---|---|---|---|
| Title | Ocean S., et al. v. Los Angeles County, et al. | | |

placement stability; (4) licensing and contracting with placement providers who do not uphold the rights of foster youth; (5) failing to ensure the access of transition age foster youth to EPSDT services; and (6) ignoring the need to expand placement capacity for transition age foster youth. Dkt. 21 ¶¶ 294–95. In support of these general averments, it is alleged that Erykah B. survived an attempted sexual assault while homeless due to DCFS's underperformance in making emergency housing placements. *Id.* ¶¶ 37–38. To remedy these alleged violations, the FAC seeks an injunction that would require Defendants to "correct systemic failures to ensure there is a minimally adequate placement array such that class members have access to safe and stable placements at all times." *Id.* at 108.

(c)   Procedural Due Process Claim

As to the Procedural Due Process Claim, the FAC alleges that Defendants deny Plaintiffs foster care placement and services without providing sufficient notice or a hearing before a neutral arbiter as required by the Fourteenth Amendment. Dkt. 21 ¶¶ 302–04. For example, it is alleged that Jackson K. was given a three-day notice to vacate his THPP-NMD placement; the notice did not cite any program rules he had violated and stated that it was his responsibility to find housing once he was discharged. *Id.* ¶ 84. To remedy these alleged violations, the FAC seeks an injunction that would require Defendants to "correct systemic failures to ensure that class members receive adequate notice and due process after any denial of placement or pushout from placement." *Id.* at 108.

(d)   Section 504 and ADA Claims

As to the Section 504 and ADA Claims, the FAC alleges that Defendants violate both statutes in the following ways: (1) denying transition age foster youth the benefits of the foster care system and Medicaid program on the basis of disability; (2) using methods of administration that discriminate against Plaintiffs and ADA Subclass members on the basis of disability; and (3) failing to provide a minimally adequate array of placements and services to meet the needs of transition age foster youth with mental health disabilities. Dkt. 21 ¶¶ 312, 331; *id.* ¶¶ 316, 335; *id.* ¶¶ 321, 340. For example, it is alleged that, although Onyx G. became eligible for THPP-NMDs when she turned 18, she is unlikely to secure a placement because "Defendants' discriminatory policies weed out applicants with mental health needs and trauma symptoms." *Id.* ¶¶ 52–54. To remedy these alleged violations, the FAC seeks an injunction that would require Defendants to "correct systemic failures to ensure Defendants do not discriminate against ADA Subclass members and instead provide them an adequate array of placements and services in the most integrated, least restrictive setting appropriate to their needs." *Id.* at 108.

(e)   Familial Association Claim

As to the Familial Association Claim, the FAC alleges that Defendants violate the rights of Plaintiffs and Expecting and Parenting Subclass members by failing to provide safe and stable placements that are appropriate for pregnant and parenting youth to reside with their children. Dkt. 21 ¶¶ 347–49. For example, it is alleged that while Ocean S. was unhoused and her daughter had been removed from her care, Ocean S. could not get her daughter back without stable housing. However, she was ineligible for the limited THPP-NMD placements for parenting youth without physical custody of her daughter. *Id.* ¶ 98. To remedy these alleged violations, the FAC seeks an injunction that would require Defendants to "correct systemic failures to ensure that Defendants do not violate the Expecting and Parenting

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV23-06921 JAK (Ex) | Date | 6/11/2024 |
|---|---|---|---|
| Title | Ocean S., et al. v. Los Angeles County, et al. | | |

Subclass members' right to familial association." *Id.* at 108.

(f)     Medicaid Act Claim

As to the Medicaid Act Claim, the FAC alleges that Defendants violate the EPSDT provisions of the statute by failing to provide or arrange necessary behavioral health services for members of the Medicaid Subclass. Dkt. 21 ¶ 352. For example, it is alleged that Junior R. did not receive necessary mental health treatment following his placement instability, which caused him to experience panic attacks and suicidal ideation. *Id.* ¶ 112. To remedy these alleged violations, the FAC seeks an injunction that would require Defendants to "correct systemic failures to ensure that Named Plaintiffs, ADA Subclass members, and Medicaid Subclass members have access to and receive the Medicaid services to which they are entitled." *Id.* at 108.

(2)     Separation of Powers

The County Defendants argue that because the matters underlying the claims at issue "involve[] areas of core state responsibility," ordinary separation-of-powers concerns are "heightened." Dkt. 51 at 15 (quoting *Horne*, 557 U.S. at 448). The County Defendants dispute the standing argument that Plaintiffs offer in support of their Substantive Due Process Claim. They contend that multiple courts have recognized that the availability of foster care placements is "uniquely out of the State's control." Dkt. 90 at 5 (quoting *M.D. by Stukenberg v. Abbott*, 907 F.3d 237, 268 (5th Cir. 2018)). As a result, the County Defendants conclude, the requested injunctive relief could only be implemented by "ordering the state to come up with more money." *Id.* (quoting *Ashley W. v. Holcomb*, 34 F.4th 588, 593–94 (7th Cir. 2022)).

The FAC does not solely attribute the alleged injuries resulting from the substantive due process violations to Defendants' failure to provide sufficient foster care placements. It also alleges the following shortcomings by Defendants: (1) failure to identify sufficient emergency housing options for transition age foster youth; (2) affirmatively issuing standards and policies that undermine placement stability; (3) licensing and contracting with placement providers that do not ensure the rights of foster youth; and (4) failure to ensure access to EPSDT services. Dkt. 21 ¶ 295. These alleged systemic failures could be remedied through injunctive relief that, based on the allegations in the FAC, would not necessarily "force[] state officials to reallocate state resources and funds." *Missouri v. Jenkins*, 515 U.S. 70, 131 (1995) (Thomas, J., concurring). Moreover, even to the extent the FAC seeks injunctive relief to expand the availability of foster care placements, it is not clear at the pleading stage that this result could not be achieved through injunctive relief targeting "the alleged mismanagement by [government] officials" rather than "financial and administrative constraints." *Connor B. ex rel. Vigurs v. Patrick*, 985 F. Supp. 2d 129, 161–62 (D. Mass. 2013).

The County Defendants next argue that the requested relief would require the Court to address "a host of complex policy decisions entrusted, for better or worse, to the wisdom and discretion of the executive and legislative branches." Dkt. 90 at 5–6 (quoting *Juliana v. United States*, 947 F.3d 1159, 1171–72 (9th Cir. 2020)). Although administering the foster care system may "raise sensitive federalism concerns," it also "goes without saying that federal courts must vigilantly enforce federal law and must not hesitate in awarding necessary relief." *Horne*, 557 U.S. at 448, 450. Further, the precise mechanics of the requested injunctive relief are not at issue at this stage. Plaintiffs need only demonstrate that "it is

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV23-06921 JAK (Ex) | Date | 6/11/2024 |
|---|---|---|---|
| Title | Ocean S., et al. v. Los Angeles County, et al. | | |

likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."
*Friends of the Earth*, 528 U.S. at 181.

Many cases support the conclusion that it is reasonable to conclude, at the pleading stage, that the
proposed injunctive relief is likely to ameliorate the systemic failures that allegedly harm
Plaintiffs. *See, e.g.*, *Massachusetts v. EPA*, 549 U.S. 497, 526 (2007) (finding redressability because
the alleged "risk would be reduced to some extent if [plaintiffs] received the relief they seek"); *B.K. by
next friend Tinsley*, 922 F.3d at 967 ("If [the] allegedly deficient policies and practices are abated by an
injunction, that harm may be redressed by a favorable court decision."); *M.D. by Stukenberg v. Abbott*,
907 F.3d 237, 273–76 (5th Cir. 2018) (affirming injunction that would require child welfare agencies to
comply with several judicial mandates, including to "track caseloads on a child-only basis" and "ensure
statewide implementation of graduated caseloads for newly hired CVS caseworkers, and all other
newly hired staff with the responsibility for primary case management services to children in the PMC
class"); *Jeremiah M.*, 2023 WL 6316631 at *14 ("An order from this Court likely could redress these
injuries by requiring systematic improvements, such as new systems for providing placements and
services, enhanced and transparent reporting, better caseload management practices, and a
requirement to conduct regular case record reviews."); *Richard Roe W.M. v. Devereux Found.*, 650 F.
Supp. 3d 319, 335 (E.D. Pa. 2023) (similar).

For the foregoing reasons, Plaintiffs have demonstrated that they presently have standing to proceed,
and the County SMJ MTD is **DENIED** on this ground.

      B.      County 12(b)(6) MTD

The County seeks to dismiss the entire action for failure to state a claim. Dkt. 52-1 at 10. In support of
this motion, the County seeks judicial notice of certain documents. Dkt. 52-2.

            1.     Request for Judicial Notice

                  a)     Legal Standards

Federal Rule of Evidence 201(b) provides that a court "may judicially notice a fact that is not subject to
reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2)
can be accurately and readily determined from sources whose accuracy cannot reasonably be
questioned." Thus, a court "may . . . consider certain materials--documents attached to the complaint,
documents incorporated by reference in the complaint, or matters of judicial notice--without converting
the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908
(9th Cir. 2003). While judicial notice is appropriate as to the fact that certain statements were made and
certain information was accessible to the public, district courts "may not take judicial notice of the
veracity of any arguments or facts presented in the documents subject to judicial notice." *Burnes v.
Chavez*, No. 19-CV-03420-LHK, 2020 WL 2306488 at *1 (N.D. Cal. May 8, 2020) (citing *Lee v. City of
Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001)).

District courts may take judicial notice of "records and reports of administrative bodies," *Anderson v.
Holder*, 673 F.3d 1089, 1094 n.1 (9th Cir. 2012) (citations omitted), as well as "undisputed matters of
public record." *Harris v. Cnty. of Orange*, 682 F.3d 1126, 1131–32 (9th Cir. 2012). Websites and their

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV23-06921 JAK (Ex) | Date | 6/11/2024 |
|---|---|---|---|
| Title | Ocean S., et al. v. Los Angeles County, et al. | | |

contents may also be subject to judicial notice. *See Threshold Enters. Ltd. v. Pressed Juicery, Inc.*, 445 F. Supp. 3d 139, 146 (N.D. Cal. 2020). The party "requesting judicial notice bears the burden of persuading the court that the particular fact is not reasonably subject to dispute and is capable of immediate and accurate determination by resort to a source whose accuracy cannot reasonably be questioned." *Newman v. San Joaquin Delta Cmty. Coll. Dist.*, 272 F.R.D. 505, 516 (E.D. Cal. 2011) (cleaned up). Accordingly, even if judicial notice is taken of a record, a court must differentiate disputed and undisputed facts. *See Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001).

 b) Analysis

The County seeks judicial notice of 28 documents, which total more than 300 pages. They include three downloads summarizing the foster care system from the website of the Alliance for Children's Rights, 24 County policies and forms as to child welfare and the State's interim licensing standards for nonminor dependents in foster care. Dkt. 52-2, 52-4. Plaintiffs argue in their RJN Opposition that the County seeks judicial notice of the documents themselves rather any underlying facts. Dkt. 70 at 2. Because the County does not identify any facts it seeks to have judicially noticed, Plaintiffs contend, the County has not satisfied its burden of showing that the facts are not reasonably subject to dispute. *Id.*

Because judicial notice is appropriate as to public records, government documents and the contents of websites, "a court may take judicial notice of the existence" of these documents, although "the Court may not, however, accept as true the facts found or alleged in such documents." *Peel v. BrooksAmerica Mortg. Corp.*, 788 F. Supp. 2d 1149, 1158 (C.D. Cal. 2011). Taking judicial notice of these public documents and the existence of certain policies does not, as Plaintiff argues, mean that these policies are being followed "in practice." Dkt. 70 at 3; *see also S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999) ("[W]e may take judicial notice of another court's opinion—not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity.").

Accordingly, the RJN is **GRANTED** only to show the existence of the foregoing public documents, including their reference to certain policies.

 2. Sufficiency of Pleadings

In support of the County 12(b)(6) MTD, the County makes two arguments. *First*, the FAC fails to state claims under 42 U.S.C. § 1983 because it "does not plead any plausible violations of federal rights," "does not plead a custom, policy, or practice to deprive such rights," "does not plead that the County is deliberately indifferent to the welfare of foster youth" and "does not plead a direct causal link between any act or omission of the County and any concrete injury." Dkt. 52-1 at 10. *Second*, the FAC fails to state claims under Section 504 and the ADA because these allegations "are equally perfunctory, conclusory, and formulaic." *Id.*

 a) Legal Standards

A plaintiff may pursue claims against a local government for constitutional injuries under 42 U.S.C. § 1983 when its officials implement a policy or custom of the local government that has that effect. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Counties are subject to *Monell* liability

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV23-06921 JAK (Ex) | Date | 6/11/2024 |
|---|---|---|---|
| Title | Ocean S., et al. v. Los Angeles County, et al. | | |

because they are not immune under the Eleventh Amendment. *Eason v. Clark Cnty. Sch. Dist.*, 303 F.3d 1137, 1141 (9th Cir. 2002) (reviewing cases). To state a claim for *Monell* liability, a plaintiff must allege the following: "(1) he was deprived of a constitutional right; (2) the municipality had a policy; (3) the policy amounted to deliberate indifference to [plaintiff's] constitutional right; and (4) the policy was the moving force behind the constitutional violation." *Lockett v. Cnty. of Los Angeles*, 977 F.3d 737, 741 (9th Cir. 2020).

"A plaintiff can satisfy *Monell's* policy requirement in one of three ways*." Gordon v. Cnty. of Orange*, 6 F.4th 961, 973 (9th Cir. 2021). Thus, a local government may be liable: (1) if it acted "pursuant to an expressly adopted official policy"; (2) if it acted in conformance with a "longstanding policy or custom"; or (3) if "the individual who committed the constitutional tort was an official with final policy-making authority or such an official ratified a subordinate's unconstitutional decision or action and the basis for it." *Id.* (cleaned up).

    b)    Analysis

The County argues that in a putative class action, "each named Plaintiff's claim must be pled individually." Dkt. 91 at 3–4 (quoting *Clark v. Am. Honda Motor Co.*, 528 F. Supp. 3d 1108, 1118 (C.D. Cal. 2021)). Because the Named Plaintiffs may not represent any other parties until issues of class certification are decided, each Named Plaintiff at this stage must meet his or her "own procedural burden under Rule 12(b)(6) and the pleading standards of *Twombly* and *Iqbal.*" *Hitch Enterprises, Inc. v. Cimarex Energy Co.*, 859 F. Supp. 2d 1249, 1257 n.4 (W.D. Okla. 2012).

This requirement is consistent with other cases that evaluated a motion to dismiss a putative class action for failure to state a claim before a decision as to class certification had been made. *See, e.g.*, *Browning v. Am. Honda Motor Co.*, 549 F. Supp. 3d 996, 1011 (N.D. Cal. 2021) (each named plaintiff "must plead their own notice claims and not rely on notice given by any other person"); *see also Rosario v. First Student Mgmt. LLC*, 247 F. Supp. 3d 560, 567 n.8 (E.D. Pa. 2017) ("Rather than commencing an action with nearly 100 named plaintiffs, the plaintiffs could have listed only the three named plaintiffs . . . . Instead, they chose to list nearly 100 named plaintiffs in their complaint and amended complaint. By doing this, the plaintiffs necessarily took on the burden of pleading FLSA violations on behalf of each of these named plaintiffs.").

    (1)    AACWA Claim

As to the AACWA Claim, the FAC alleges that "Defendants, while acting under color of law, have developed and maintained customs, policies, and practices that deprive Plaintiffs of their statutory rights under" AACWA as follows: (1) failing to provide legally compliant case plans; and (2) failing to ensure a case review system that includes a legally compliant transition plan. Dkt. 21 ¶ 291. It is alleged that Defendants violate AACWA by using transitional independent living plans that do not meet AACWA requirements and "routinely fail to discuss the safety or stability of the foster youth's current placement, the reasoning behind the choice of placement, or even the type of placement in which the youth is residing." *Id.* ¶ 181. It is further alleged that Defendants violate AACWA by developing "formulaic" case plans that "lack description of individualized trauma-responsive supports and treatments needed by the youth." *Id.* ¶ 182.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV23-06921 JAK (Ex) | Date | 6/11/2024 |
|---|---|---|---|
| Title | Ocean S., et al. v. Los Angeles County, et al. | | |

Plaintiffs argue that the FAC adequately states a *Monell* claim because "multiple unrelated Plaintiffs have alleged a pattern of AACWA violations over multiple years and connected those violations to specific unlawful County customs and practices." Dkt. 67 at 18. The County responds that the FAC offers only "fact-free conclusions that case 'planning' was inadequate" and "likewise offers no facts establishing that Plaintiffs' case plans are missing any required components." Dkt. 91 at 4.

The FAC alleges the following: (1) Onyx G. did not receive "legally compliant case plans and transition plans"; (2) Ocean S. "received limited to no transition planning"; (3) Junior R. did not receive "adequate transition planning support"; and (4) Monaie T. did not receive "appropriate case planning." Dkt. 21 ¶¶ 57, 93, 113, 126. However, the FAC does not allege AACWA violations as to the three remaining Named Plaintiffs. Moreover, even as to Onyx G., Ocean S., Junior R. and Monaie T., the FAC does not allege the specific AACWA provisions that Defendants allegedly violated, or that this conduct caused harm to each Named Plaintiff. *See, e.g.*, *Gatlin v. Contra Costa Cnty.*, No. 21-CV-00370-SI, 2023 WL 8853713, at *12 (N.D. Cal. Dec. 21, 2023) (" 'Case Plan' as defined in 42 U.S.C. § 675(1) involves many components . . . and the FAC provides no detail regarding which pieces of the case plan County defendants failed to provide."); *cf. D.C. by & through Cabelka v. Cnty. of San Diego*, 445 F. Supp. 3d 869, 893 (S.D. Cal. 2020) (complaint stated *Monell* claim by alleging specific "policies, customs, or practices that caused the violations of [a specific plaintiff's] federal rights" under AACWA).

Because the FAC does not state a claim under AACWA as to more than one Named Plaintiff, it also does not adequately allege the specific nature of the County's claimed policy or custom of violating AACWA. As a result, the allegations are not sufficiently specific to state a claim under *Monell*. Therefore, the County 12(b)(6) MTD is **GRANTED** with leave to amend as to the AACWA claim.

(2)    <u>Substantive Due Process Claim</u>

The FAC alleges that, "[b]ecause Defendants have restrained Plaintiffs' personal liberty by taking them into State custody and extending their foster care past age eighteen by operation of law, Defendants owe Plaintiffs reasonable safety, placement, and minimally adequate care and treatment appropriate to the Plaintiffs' age and circumstances." Dkt. 21 ¶ 294. It is alleged that "Defendants assumed an affirmative duty under the Fourteenth Amendment to the United States Constitution to protect Plaintiffs from harm, including but not limited to the harm caused by extreme housing instability and homelessness" because of this "special relationship with Plaintiffs." *Id.* It is alleged that Defendants have developed and maintained customs that deprive Plaintiffs of their constitutional rights. *Id.* ¶ 295.

The County argues that the Substantive Due Process Claim fails because it does not have an affirmative duty under the Fourteenth Amendment to provide the claimed rights, and because Plaintiffs do not allege any cognizable rights. Dkt. 52-1 at 17. Plaintiffs respond that transition foster care youth are owed the same substantive due process rights as minors in foster care, and that Defendants' "durable and widespread policy of deliberate indifference to Plaintiffs' rights gives rise to municipal liability." Dkt. 67 at 15–16.

As to whether Plaintiffs are owed an affirmative duty under the Fourteenth Amendment, the Due Process Clause does not generally "confer any affirmative right to governmental aid." *Henry A. v. Willden*, 678 F.3d 991, 998 (9th Cir. 2012) (cleaned up). However, the "special relationship" exception to this rule applies "when a custodial relationship exists between the plaintiff and the State such that the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV23-06921 JAK (Ex) | Date | 6/11/2024 |
|---|---|---|---|
| Title | Ocean S., et al. v. Los Angeles County, et al. | | |

State assumes some responsibility for the plaintiff's safety and well-being." *Id*. The Ninth Circuit has held that the "special relationship doctrine applies to children in foster care." *Id*. at 1000; *see also Lipscomb by & through DeFehr v. Simmons*, 962 F.2d 1374, 1379 (9th Cir. 1992) ("Once the state assumes wardship of a child, the state owes the child, as part of that person's protected liberty interest, reasonable safety and minimally adequate care and treatment appropriate to the age and circumstances of the child.").

This special relationship does not automatically terminate when a foster youth becomes 18 years old. Although a person who is no longer a minor is not in the "legal custody" of the juvenile courts (Cal. Welf. & Inst. Code § 303), he or she may remain in a custodial relationship with the state. As the County Defendants stated in support of the County SMJ MTD, Plaintiffs entered the foster care system as a result of "*state*-initiated proceeding[s]." Dkt. 51-1 at 18 (emphasis added). Similarly, although nonminor dependents may have the legal ability to leave what they deem an unsuitable placement, they remain in extended foster care because "they require support and do not have family members able to care from them," in large part due to the "state's own action in removing these children from their families." Dkt. 67 at 14. Because the "the law does not impose the duty of guarding their own safety on wards of the state," *Tamas v. Dep't of Soc. & Health Servs.*, 630 F.3d 833, 842 (9th Cir. 2010), the special relationship exception applies to all transition foster care youth, including nonminor dependents.

As to whether Plaintiffs have alleged cognizable rights, the FAC alleges that "Defendants, while acting under color of law, have developed and maintained customs, policies and practices that deprive Plaintiffs of their constitutional rights" as follows: (1) failing to provide a minimally adequate array of safe and stable placements; (2) failing to identify sufficient emergency housing options for youth transitioning between placements or reentering care; (3) affirmatively issuing standards and policies that undermine placement stability; (4) licensing and contracting with placement providers that do not uphold the rights of foster youth; (5) failing to ensure transition age foster youth's access to EPSDT services; and (6) ignoring the need to expand placement capacity for transition age foster youth. Dkt. 21 ¶ 295.

Due to their special relationship with the state, transition age foster youth have the right to the "basic human needs--*e.g.*, food, clothing, shelter, medical care, and reasonable safety." *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 197 (1989). However, "[t]he Fourteenth Amendment does not entitle [foster youth] to receive optimal treatment and services, nor does it afford them the right to be free from any and all psychological harm at the hands of the State." *M.D. by Stukenberg*, 907 F.3d at 251. Further, the "[t]he right to substantive due process does not . . . extend to placement in an optimal or least-restrictive setting, or to the availability of an array of placement options." *Wyatt B. by McAllister v. Brown*, No. 19-CV-00556-AA, 2021 WL 4434011, at *9 (D. Or. Sept. 27, 2021). Relatedly, "no Supreme Court or Ninth Circuit precedent suggests that licensing activities of this nature [(*i.e.*, a "licensing scheme that was created to increase the safety and security of home daycare facilities through inspection and other procedures")] may expose state actors to liability for constitutional torts." *Tobin v. Washington*, 327 F. Appx. 747, 748 (9th Cir. 2009). Finally, although "beneficiaries have a constitutionally protected property interest in Medicaid benefits," the lack of access to certain benefits gives rise to a procedural, not substantive, due process right. *Olson v. Carter*, No. 21-CV-00929 JAM CKD PS, 2021 WL 3115126, at *4 (E.D. Cal. July 22, 2021) (cleaned up).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV23-06921 JAK (Ex) | Date | 6/11/2024 |
|---|---|---|---|
| Title | Ocean S., et al. v. Los Angeles County, et al. | | |

In contrast, because shelter presents a basic human need, transition age foster youth have a substantive due process right to "emergency housing options." Dkt. 21 ¶ 295. In support of the claim that the County Defendants violated this right, the FAC alleges that the following occurred because there were inadequate emergency housing placements: (1) Erykah B. was unhoused; (2) Onyx G. became homeless for a period of time and was at a homeless shelter for foster children; (3) Rosie S. became homeless for a period of time because of structural difficulties in navigating reentry; (4) Ocean S.'s time in foster care included periods of homelessness; (5) Junior R. became homeless for a period of time; and (6) Monaie T. became homeless for a period of time. *Id.* ¶¶ 38, 52, 66, 91, 109, 124. The FAC does not allege that Jackson K. became homeless; rather, it is alleged that Jackson K. stayed in a hotel for two weeks after he was required to leave his adoptive home. *Id.* ¶ 78.

The allegations as to all the Named Plaintiffs other than Jackson K. are sufficiently specific. They are also supported by additional allegations that the County Defendants had a longstanding policy of deliberate indifference to Plaintiffs' rights. As applied to foster children, the "deliberate indifference standard . . . requires a showing of an objectively substantial risk of harm and a showing that the officials were subjectively aware of facts from which an inference could be drawn that a substantial risk of serious harm existed and that either the official actually drew that inference or that a reasonable official would have been compelled to draw that inference." *Tamas*, 630 F.3d at 845. The FAC alleges that, although the County Board of Supervisors recognized an "acute need for youth in extended foster care and youth exiting foster care to have access to housing programs," the County Defendants neither expanded capacity "despite the stated availability of both the funds and the contractor capacity to do so," nor collected data that might reveal the severity of the problem. Dkt. 21 ¶¶ 164, 168, 171. These allegations are sufficiently specific to state a claim under *Monell*.

For these reasons, the County 12(b)(6) MTD is **DENIED IN PART** as to the Substantive Due Process Claim brought by the Named Plaintiffs other than Jackson K. to the extent it is premised on a right to shelter. The County 12(b)(6) MTD is **GRANTED IN PART** with leave to amend as to all other bases for the Substantive Due Process Claim.

(3)    Procedural Due Process Claim

The FAC alleges that "Defendants, acting under color of law, have deprived Plaintiffs of their property without providing adequate procedural safeguards by failing to provide for sufficient notice or hearing before a neutral arbiter before a youth is denied admission to, or evicted from, programs like THPP-NMD and SILP." Dkt. 21 ¶ 302. It is alleged that Defendants' policies: (1) "allow THPP-NMD programs to deny admission without written notice or a meaningful opportunity to contest the reasons for denial"; (2) "allow inadequate notice and opportunity to be heard when youth are pushed out of a THPP-NMP placement"; (3) "allow THPP-NMD programs to misclassify as 'emergencies' behaviors that could be addressed through trauma-responsive approaches" and thereby permit programs, "by misclassifying this conduct," to "unlawfully and involuntarily exit Plaintiffs from their placements without any notice at all"; and (4) allow SILP programs to deny or delay placement, or abruptly withdraw financial support for Plaintiffs, "without notice and an opportunity to appeal or grieve Defendants' actions." *Id.* It is alleged that these denials result "in a grievous loss for Plaintiffs, without providing timely notice, a pre-termination hearing, and an impartial decision-maker as required by the Fourteenth Amendment." *Id.* ¶ 304.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV23-06921 JAK (Ex) | Date | 6/11/2024 |
|---|---|---|---|
| Title | Ocean S., et al. v. Los Angeles County, et al. | | |

Plaintiffs argue that they have a protected property interest in the "right" under state law "to live in a safe, healthy, and comfortable home" and to be "placed in the least restrictive setting possible." Dkt. 67 at 18 (citing Cal. Welf. & Inst. Code §§ 16001.9(a)(1), 16001.9(a)(4)). The County responds that this argument is a "red herring" because "Plaintiffs' due process claim is not based on any property interest in receiving a *placement*," but on a claimed "property interest in admission to the specific THPP-NMD provider (*i.e.*, apartment building or other housing) of their choice." Dkt. 91 at 9. The County contends that "[t]hat is a key distinction," because "[y]outh not accepted into one THPP-NMD residence can apply to another." *Id.*

The Supreme Court has held that a person seeking a government benefit has a property interest protected by procedural due process only if the person has "a legitimate claim of entitlement to it." *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). Procedural due process claims are subject to a two-step inquiry: "the first asks whether there exists a liberty or property interest which has been interfered with by the State" while "the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). A protected property interest "may arise from two sources--the Due Process Clause itself and the laws of the States." *Kentucky Dep't of Corr.*, 490 U.S. at 460 (citation omitted); *see also Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 430 (1982) ("The hallmark of property . . . is an individual entitlement grounded in state law, which cannot be removed except 'for cause.' "). Although there is no property interest in a government benefit awarded under "unbridled discretion," *City of Santa Clara v. Andrus*, 572 F.2d 660, 676 (9th Cir. 1978), if any discretion in the selection process is "closely circumscribe[d]" by "regulations and guidelines," there is a protected claim of entitlement. *Ressler v. Pierce*, 692 F.2d 1212, 1215 (9th Cir. 1982).

California law grants foster youth the "right" to "live in a safe, healthy, and comfortable home," and the right to "be placed in the least restrictive setting possible." Cal. Welf. & Inst. Code §§ 16001.9(a)(1), 16001.9(a)(4). However, the Procedural Due Process Claim is not premised on Plaintiffs' alleged failure to receive any placement. Instead, it is based on their alleged failure to receive admission to specific placements, including "programs like THPP-NMD and SLIP." Dkt. 21 ¶ 302. Determining whether a specific placement presents the "least restrictive setting possible" turns on the individual circumstances and subjective preferences of each foster youth. It is, therefore, inherently discretionary. Accordingly, the right to "be placed in the least restrictive setting possible" does not give rise to a protected claim of entitlement under state law.

For these reasons, the County 12(b)(6) MTD is **GRANTED** with leave to amend as to the Procedural Due Process Claim.

(4)    Familial Association Claim

The FAC alleges that "[u]nder the First and Fourteenth Amendment to the United States Constitution, state actors cannot infringe on the constitutional right to form and maintain certain intimate or private relationships free from unjustified governmental inference, including associational rights that attend the creation and sustenance of a family, including the upbringing of children." Dkt. 21 ¶ 347. It is alleged that "Defendants, while acting under color of law and with deliberate indifference to the rights of Plaintiffs and Expecting and Parenting Subclass members, have developed and maintained customs, policies, and practices that have violated Plaintiffs' and subclass members' freedom of intimate

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV23-06921 JAK (Ex) | Date | 6/11/2024 |
|---|---|---|---|
| Title | Ocean S., et al. v. Los Angeles County, et al. | | |

association, by failing to provide safe and stable placements appropriate for pregnant and parenting youth to reside with their children." *Id.* ¶ 349. Because of these alleged failures, the FAC states that Plaintiffs and Expecting and Parenting Subclass members have been injured because they: (1) "experienced homelessness, a contributing factor to family separation"; (2) faced barriers "reunify[ing] with detained children"; and (3) faced interference with their ability "to parent their children while participating in extended foster care." *Id.*

Plaintiffs contend that the FAC states a Familial Association Claim because "Defendants are deliberately indifferent" to "a parent's fundamental liberty interest in companionship with her child." Dkt. 67 at 25. The County argues that there is no constitutional violation because there is no right "for pregnant and parenting youth to reside with their children." Dkt. 52-1 at 25.

The Ninth Circuit has stated that there is "no affirmative obligation to fund plaintiffs' exercise of a right to maintain family relationships free from governmental interference." *Lipscomb by & through DeFehr*, 962 F.2d at 1379. Instead, "[c]ourts have consistently held that the right to familial association is a negative right--the right to be free from unwarranted or unjustified state interference in certain existing intimate relationships." *Jeremiah M.*, 2023 WL 6316631, at *17; *see also, e.g.*, *Mullins v. State of Oregon*, 57 F.3d 789, 794 (9th Cir. 1995) ("A negative right to be free of governmental interference in an already existing familial relationship does not translate into an affirmative right . . . ."); *Black v. Beame*, 419 F. Supp. 599, 607 (S.D.N.Y. 1976) ("There is no constitutional obligation on the state . . . to affirmatively insure a given type of family life, and none may be created by inference and misdirection through the penumbral constitutional right to familial privacy.").

The FAC does not allege that the Named Plaintiffs with claims common to the Expecting and Parenting Subclass--Rosie S., Ocean S. or Monaie T--were denied custody or access to their children. Rather, it alleges that Defendants violated Plaintiffs' rights "by failing to provide safe and stable placements appropriate for pregnant and parenting youth to reside with their children." Dkt. 21 ¶ 349. Because this claim is based on the existence of an affirmative right to familial association for which no constitutional basis has been shown, the County 12(b)(6) MTD is **GRANTED** with leave to amend as to the Familial Association claim.

(5)   <u>Medicaid Act Claim</u>

The FAC alleges that "Defendants, while acting under color of law, have violated the EPSDT provisions of the Medicaid Act, by failing to provide or arrange for behavioral health services for the Medicaid Subclass that are necessary to correct or ameliorate their mental health conditions in violation of 42 U.S.C. §§ 1396a(a)(10)(A), 42 U.S.C. §§ 1396a(43)(C), 1396d(a)(4)(B) and 1396(r)." Dkt. 21 ¶ 352. It is also alleged that "Defendants' acts and omissions described above violate 42 U.S.C. § 1983 by depriving Plaintiffs and members of the Medicaid Subclass of their statutory rights." *Id.* ¶ 354. It is alleged that, as a state participating in Medicaid, California is required to provide EPSDT services for Medicaid eligible youth participants under the age of 21, including "screenings to identify transition age foster youth's mental and physical health needs, as well as arrange for treatment services necessary to correct or ameliorate a youth's mental or physical health conditions." *Id.* ¶ 261.

The County argues that the FAC fails to state a Medicaid Act claim because it is "silent as to what services, covered by Medicaid, Plaintiffs are entitled to, why they are entitled to them, why it was

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV23-06921 JAK (Ex) | Date | 6/11/2024 |
|---|---|---|---|
| Title | Ocean S., et al. v. Los Angeles County, et al. | | |

denied, and why such denial was improper." Dkt. 52-1 at 27. Plaintiffs respond by citing the allegations of the following Named Plaintiffs: (1) Onyx G. "did not receive adequate mental health support," including "cognitive behavioral therapy and anger management programs"; (2) Rosie S. was not "successfully connect[ed] . . . with a therapist"; (3) Ocean S. received therapy that was "inconsistent and sporadic, often with long wait times"; and (4) Junior R. waited "for months before he was finally able to connect with the services he needs." Dkt. 21 ¶¶ 58, 72, 102, 112.

To state a claim under the EPSDT provisions, a plaintiff must allege the specific "medical assistance . . . [that] is at issue," and show that "other . . . Medicaid recipients are receiving services that plaintiff, who has comparable needs, is being denied." *Olson*, 2021 WL 3115126, at *6; *see also Shaughnessy v. Wellcare Health Ins. Inc.*, No. 17-00635 DKW-KSC, 2017 WL 663230, at *3 (D. Haw. Feb. 16, 2017) (dismissing claim not supported "with the necessary facts regarding the relevant state plan, the required care and services to be provided to Medicaid recipients under that state plan, and whether the services [the plaintiff] claims he was denied are within the scope of the state plan"). The FAC does not include such specific allegations as to any Named Plaintiff.

Because the FAC does not state a claim under the EPSDT provisions as to more than one Named Plaintiff, it also does not adequately allege the specific nature of the County's claimed policy or custom of violating the Medicaid Act. As a result, the allegations are not sufficiently specific to state a claim under *Monell*. Therefore, the County 12(b)(6) MTD is **GRANTED** with leave to amend as to the Medicaid Act Claim.

(6)     Section 504 and ADA Claims

The FAC alleges that, under the terms of Section 504 and the ADA, Defendants are prohibited "from discriminating against individuals with disabilities," including "through contractual, licensing, or other arrangements." Dkt. 21 ¶ 307; *see id.* ¶ 327. It is alleged that Plaintiffs with mental health disabilities are protected under Section 504 and the ADA and by the corresponding, implementation regulations. *Id.* ¶¶ 308, 329. It is alleged that Defendants violate both statutes for the following reasons: (1) denying transition age foster youth the benefits of the foster care system and Medicaid program on the basis of disability (the "General Discrimination Claims"); (2) using methods of administration that discriminate against Plaintiffs and ADA Subclass members on the basis of disability (the "Methods of Administration Claims"); and (3) failing to provide a minimally adequate array of placements and services to meet the needs of transition age foster youth with mental health disabilities (the "Integration Mandate Claims"). *Id.* ¶¶ 312, 331; *id.* ¶¶ 316, 335; *id.* ¶¶ 321, 340.

The County argues that the FAC fails to state a claim under both Section 504 and the ADA because it "rehash[es] . . . Plaintiffs' other generalized criticisms, with a tacked-on conclusion the County has failed to make reasonable modifications to avoid disproportionately harming children with disabilities." Dkt. 52-1 at 34. Plaintiffs respond that "Defendants' attacks on Plaintiffs' ADA and RA claims simply state that elements are missing, without engaging with any of the allegations in the FAC." Dkt. 67 at 31.

Title II of the ADA prohibits public entities from discriminating on the basis of disability, *see* 42 U.S.C. § 12132, and Section 504 imposes a similar bar against those who receive federal funding. *See* 29 U.S.C. § 794. "The two laws are interpreted coextensively because there is no significant difference in the analysis of rights and obligations created by the two Acts." *Payan v. L.A. Cmty. Coll. Dist.*, 11 F.4th

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV23-06921 JAK (Ex) | Date | 6/11/2024 |
|---|---|---|---|
| Title | Ocean S., et al. v. Los Angeles County, et al. | | |

729, 737 (9th Cir. 2021) (cleaned up). To state a claim under Title II of the ADA, a plaintiff must allege: (1) he or she is a qualified individual with a disability; (2) he or she was excluded from participation in or denied the benefits of a public entity's services, programs or activities; and (3) such discrimination was by reason of their disability. *See Duvall v. Cnty. of Kitsap*, 260 F.3d 1124, 1135 (9th Cir. 2001).

As to the first element, the FAC alleges that "Plaintiffs and members of the ADA Subclass have mental health disabilities that substantially limit one or more major life activities, or have a record of such disabilities, and therefore have a disability as defined by the ADA, 42 U.S.C. §§ 12102 *et seq.*, and its implementing regulations, 28 C.F.R. § 35.108." Dkt. 21 ¶ 328. These regulations provide that certain psychiatric diagnoses presumptively "substantially limit" major life activities, including "[m]ajor depressive disorder, bipolar disorder, post-traumatic stress disorder, obsessive compulsive disorder, and schizophrenia." 28 C.F.R. § 35.108(d)(2)(iii)(K).

The FAC alleges the following: (1) Erykah B. was diagnosed with PTSD; (2) Onyx G. was diagnosed with major depressive disorder; (3) Rosie S. was diagnosed with major depressive disorder; (4) Jackson K. "has lived with the disability of deafness his entire life"; (5) Ocean S. was diagnosed with PTSD; and (6) Junior R. has been diagnosed with depression, anxiety and attention deficit hyperactivity disorder, and experienced panic attacks and suicidal ideation as a result of his placement instability. Dkt. 21 ¶¶ 43, 49, 72, 86, 90, 112. The FAC does not allege that Monaie T. has a disability.

As to the second and third elements of this cause of action, "[w]here a plaintiff challenges a program's policy or practice of failing to remedy systemic barriers," the claim is properly evaluated under the disparate impact framework. *Payan*, 11 F.4th at 739. To assert a disparate impact claim, a plaintiff must allege that a facially neutral government policy has the "effect of denying meaningful access to public services." *K.M. ex rel. Bright v. Tustin Unified Sch. Dist.*, 725 F.3d 1088, 1102 (9th Cir. 2013). The FAC alleges that Defendants have discriminated against transition age foster youth with disabilities through the following actions: (1) failing to provide support and accommodations in the SILP and THPP-NMD application process; (2) screening eligibility for THPP-NMD programs based on mental health diagnoses and behaviors consistent with trauma; (3) encouraging disability discrimination by providing mental health histories to placement providers with no restrictions as to use; (4) not allowing youth with disabilities to dispute a provider's interpretation of their needs or request reasonable accommodations; and (5) systematically failing to provide reasonable accommodations. Dkt. 21 ¶¶ 222–29.

These alleged discriminatory policies are sufficiently specific and are also supported by allegations of individual discrimination against each Named Plaintiff, except Monaie T. The FAC alleges the following: (1) Erykah B. developed behavioral challenges and difficulties developing emotion management skills as a result of Defendants' care, who respond by blaming her for these challenges; (2) Onyx G. was cycled through STRTPs where she experienced verbal harassment and felt unsafe; (3) Rosie S. was not provided with written notice of the denials of her THPP-NMD applications; (4) Ocean S. was repeatedly rejected from THPP-NMD programs and then required to leave her THPP-NMD placement after she experienced a domestic violence incident; (5) Junior R. was rejected from THPP-NMDs based on his behavioral history with no opportunity to request necessary accommodations; and (6) Jackson K. learned of several denials by THPP-NMD programs but had no opportunity to present his application or respond, let alone discuss reasonable accommodations that would allow him to succeed in the programs. *Id.* ¶¶ 44, 50, 70, 95–97, 114–15, 192.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV23-06921 JAK (Ex) | Date | 6/11/2024 |
| Title | Ocean S., et al. v. Los Angeles County, et al. | | |

The County also argues that the Integration Mandate Claims should be dismissed because no Plaintiff has shown that "the challenged state action creates a serious risk of institutionalization." Dkt. 52-1 at 34 (quoting *M.R. v. Dreyfus*, 663 F.3d 1100, 1116 (9th Cir. 2011)). The Ninth Circuit has explained that such a risk arises when "[t]he elimination of services that have enabled Plaintiffs to remain in the community violates the ADA, regardless of whether it causes them to enter an institution immediately, or whether it causes them to decline in health over time and eventually enter an institution in order to seek necessary care." *Dreyfus*, 663 F.3d at 1116. Plaintiffs respond that the County's reliance on *Lane v. Kitzhaber*, 841 F. Supp. 2d 1199 (D. Or. 2012), is misplaced because the district court there rejected the argument that the integration mandate "applies only where the plaintiff faces a risk of institutionalization in a residential setting." Dkt. 67 at 33 (quoting *Lane*, 841 F. Supp. 2d at 1206).

The Ninth Circuit has not modified its holding that a plaintiff alleging an integration mandate claim must "show that the challenged state action creates a serious risk of institutionalization." *Dreyfus*, 663 F.3d at 1116. *Lane* did not state a different standard. Instead, the district court held "that the risk of institutionalization addressed in . . . *Dreyfus* includes segregation in the employment setting." *Lane,* 841 F. Supp. 2d at 1205. Because the FAC alleges violations of the integration mandate in residential, but not employment, settings and does not state or imply a risk of institutionalization, it does not adequately allege the Integration Mandate Claims.[1]

For these reasons, the County 12(b)(6) MTD is **DENIED IN PART** as to the General Discrimination and Methods of Administration Claims brought by the Named Plaintiffs other than Monaie T. The County 12(b)(6) MTD is **GRANTED IN PART** with leave to amend as to the Section 504 and ADA Claims brought by Plaintiff Monaie T. and as to the Integration Mandate Claims brought by all the Named Plaintiffs.

       C.     Department MTD

The Departments seek to dismiss all claims against DMH, *i.e.*, the Medicaid Act Claim and Section 504 and ADA Claims, for failure to state a claim. Dkt. 53-1 at 2. They also seek to dismiss all claims against both DMH and DCFS as redundant. *Id.* at 2–3.

          1.     <u>Sufficiency of Pleadings against DMH</u>

The FAC alleges three claims against DMH: the Medicaid Act Claim, and the Section 504 and ADA Claims. Dkt. 21 ¶¶ 306–45, 351–55. The Departments argue that these claims should be dismissed because "the FAC contains nothing but a series of vague claims about DMH's legal obligations and conclusions that it is not meeting them." Dkt. 53-1 at 6.

             a)     Medicaid Act Claim

Because the Medicaid Act Claim is **DISMISSED** with leave to amend, the argument that the FAC fails to state a claim under the Medicaid Act against DMH is **MOOT**.

---

[1] Plaintiffs argue in the Department Opposition that Onyx G. was institutionalized because of Defendants' failure to conform its behavior to the Integration Mandate. Dkt. 69 at 16. However, this alleged causal link is not stated in the FAC. *See* Dkt. 21 ¶ 46–61.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV23-06921 JAK (Ex) | | Date | 6/11/2024 |
|---|---|---|---|---|
| Title | Ocean S., et al. v. Los Angeles County, et al. | | | |

b)    Section 504 and ADA Claims

Because the Integration Mandate Claims are **DISMISSED** with leave to amend, it is only necessary to consider whether the General Discrimination and Methods of Administration Claims brought by the Named Plaintiffs other than Monaie T. are adequately alleged against DMH.

The FAC alleges that "DMH is the agency responsible for providing behavioral health services to transition age foster youth in Los Angeles, including providing necessary Specialty Mental Health Services." Dkt. 21 ¶ 26. It is alleged that "CDSS and DCFS, together with DHCS and DMH, are public agencies that all accept federal dollars and are responsible for ensuring that youth in the foster care system with mental health conditions are served in accordance with federal law, including the ADA and Section 504." *Id.* ¶ 130. It is then alleged on information and belief that "many of the youth residing in SILP experience severe placement instability that could be mitigated if DMH provided needed Medicaid services to help youth maintain placement." *Id.* ¶ 230. It is next alleged that "DMH does not make available trauma treatments that would help [transition age foster youth] develop strategies to be successful in SILP placements." *Id.* ¶ 238. This allegation "gives rise to an inference (albeit a weak one)," *Duronslet v. Cnty. of Los Angeles*, 266 F. Supp. 3d 1213, 1220 (C.D. Cal. 2017), that a DMH policy has the "effect of denying meaningful access to public services." *K.M. ex rel. Bright*, 725 F.3d at 1102; *see also Clifton v. Houghton Mifflin Harcourt Publ'g Co.*, 152 F. Supp. 3d 1221, 1225 (N.D. Cal. 2015) ("Here, [the plaintiff] has alleged what he can, based on the information he has.").

For these reasons, the Department MTD is **DENIED** on the ground that the FAC fails to state Section 504 and ADA Claims against DMH.

2.    Redundancy of Claims

The Departments also argue that the FAC fails against both DMH and DCFS "for the separate and independent reason that all of its claims are redundant of the same causes of action asserted against the County." Dkt. 53-1 at 7.

a)    Legal Standards

42 U.S.C. § 1983 provides a cause of action against "any person" who, under of color law, deprives any individual of federal constitutional or statutory rights. *S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 887 (9th Cir. 2003). The term "person" encompasses "municipalities and other local government units." *Monell*, 436 U.S. at 690. "Local government entities, such as DCFS, are 'persons' subject to liability under [section] 1983 where official policy or custom causes a constitutional tort." *Ray v. Hobbs*, No. C 09-252 SI PR, 2011 WL 723606, at *8 (N.D. Cal. Feb. 22, 2011); *see also Holland v. Cnty. of Los Angeles*, No. CV 12-0461 AG (SHx), 2012 WL 12930525, at *5 (C.D. Cal. June 11, 2012) (DCFS is a "division" of the County).

Because "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity," *Kentucky v. Graham*, 473 U.S. 159, 166 (1985), "[w]hen both a municipal officer and a local government entity are named, and the officer is named only in an official capacity, the court may dismiss the officer as a redundant defendant." *Ctr. for Bio-Ethical Reform, Inc. v. L.A. Cnty. Sheriff Dep't*, 533 F.3d 780, 799 (9th Cir. 2008). In contrast, the Ninth Circuit has suggested that a section

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV23-06921 JAK (Ex) | Date | 6/11/2024 |
|---|---|---|---|
| Title | Ocean S., et al. v. Los Angeles County, et al. | | |

1983 action may proceed against both a municipality and its departments. *See Streit v. Cnty. of Los Angeles*, 236 F.3d 552, 555–56 (9th Cir. 2001) ("Because we conclude that the LASD, when implementing its policy of conducting prisoner release records checks, acts for the County in its capacity as the administrator of the Los Angeles County jails, we hold that both the LASD and the County are subject to liability under section 1983.").

        b)      Analysis

The Departments argue that "[c]ourts frequently dismiss § 1983 claims against municipal departments where the claims arise out of the same facts as the claims against the municipality." Dkt. 92 at 9. As a result, they contend, the claims against DMH and DCFS should be dismissed. *Id.* at 11. Plaintiffs respond that "there simply is no rule of law requiring a court to dismiss a municipal entity as a duplicative, redundant, or unnecessary defendant in cases where the municipality itself is named." Dkt. 69 at 19 (quoting *Hurth v. Cnty. of Los Angeles*, No. CV09-5423 SVW (PJWx), 2009 WL 10696491, at *5 (C.D. Cal. Oct. 28, 2009); *see also Est. of Burgos v. Cnty. of Los Angeles*, No. CV21-5566 FMO (GJSx), 2022 WL 17078648, at *4 (C.D. Cal. July 18, 2022) ("[D]efendants fail to identify any controlling authority that plaintiffs cannot assert claims under 42 U.S.C. § 1983 against [the Los Angeles County Department of Health Services]" and the County.).

Because the FAC alleges that DMH and DCFS have distinct responsibilities, *i.e.*, to provide behavioral health services and administer foster care services, respectively (Dkt. 21 ¶¶ 24, 26), it is appropriate for the Departments to remain as parties in this action. This will "result in more efficient discovery," *Cantu v. Kings Cnty.*, No. 20-CV-00538-NONE-SAB, 2021 WL 859428, at *10 (E.D. Cal. Mar. 8, 2021), and ultimately, facilitate a more appropriate resolution of the case.

Therefore, the Department MTD is **DENIED** on the ground that DMH and DCFS are redundant parties.

        D.      CDSS MTD

CDSS seeks to dismiss all claims against CDSS--the 1983 Claims, *i.e.*, the AACWA Claim, Substantive Due Process Claim, Procedural Due Process Claim and Familial Association Claim, and the Section 504 and ADA Claims--for failure to state a claim. Dkt. 50 at 11–13. Plaintiffs concede that under the Eleventh Amendment, the 1983 Claims against CDSS should be dismissed as to the state agency. Dkt. 68 at 31 n.4. The only remaining issue is whether the 1983 Claims are adequately alleged against Director Johnson.

        1.      <u>1983 Claims</u>

The FAC alleges that as Director of CDSS, "Defendant Johnson is responsible for administering laws relating to foster care services; promulgating regulations and standards; supervising the administration of public social services, including foster care services; and investigating, examining, and making reports on public offices responsible for the administration of social services." Dkt. 21 ¶ 31. It is alleged that "[u]nder California Welfare and Institutions Code § 10605, she has the authority to enforce state and federal law." *Id.* The FAC has no additional factual allegations about Director Johnson.

"A defendant may be held liable as a supervisor under § 1983 'if there exists either (1) his or her

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV23-06921 JAK (Ex) | Date | 6/11/2024 |
|---|---|---|---|
| Title | Ocean S., et al. v. Los Angeles County, et al. | | |

personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.' " *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)). However, because "allegations in a complaint . . . may not simply recite the elements of a cause of action," *id.* at 1216, the Ninth Circuit has held that a claim for supervisory liability may fail if the complaint does not allege that the supervisor "had any personal knowledge of the specific constitutional violations that led to Plaintiffs' injuries or that they had any direct responsibility to train and supervise the caseworkers employed by [the] County." *Henry A.*, 678 F.3d at 1004.

Because the FAC does not include such allegations as to Director Johnson, the CDSS MTD is **GRANTED** with leave to amend.

### 2. Section 504 and ADA Claims

Because the Integration Mandate Claims are **DISMISSED** with leave to amend, the only remaining issues is whether the General Discrimination and Methods of Administration Claims brought by the Named Plaintiffs other than Monaie T. are adequately alleged against CDSS.

The FAC alleges that "CDSS is the single state agency responsible for supervising and monitoring the administration of foster care services in California." Dkt. 21 ¶ 30. It is also alleged that "CDSS is responsible for licensing and overseeing placement programs and services in California for youth in foster care, including establishing and maintaining standards for foster family homes and childcare institutions." *Id.* ¶ 129. It is then alleged that CDSS promulgates "Interim Licensing Standards" that regulate the "policies, procedures, and day-to-day operations" of THPP-NMD providers. *Id.* ¶ 147. These standards allegedly encourage discrimination against transition age foster youth with disabilities as follows: (1) failing to place "legally-required guard rails on how the disability can be used to assess suitability for THPP-NMD"; (2) enumerating "grounds for removal and discharge" based on behavioral or psychiatric crises; and (3) allowing programs to push out youth with disabilities who require accommodations that do not align with THPP-NMD's programming and staffing. *Id.* ¶¶ 225, 246, 247.

These alleged discriminatory policies are sufficiently specific and give rise to the inference that CDSS policies have the "effect of denying meaningful access to public services." *K.M. ex rel. Bright*, 725 F.3d at 1102. Therefore, the CDSS MTD is **DENIED**.

### E. DHCS MTD

DHCS seeks to dismiss all claims against DHCS--the 1983 Claim, *i.e.*, the Medicaid Act Claim, and the Section 504 and ADA Claims--for failure to state a claim and on redundancy grounds. Dkt. 53-1 at 2–3. Plaintiffs concede that under the Eleventh Amendment, the Medicaid Act Claim against the state agency. Dkt. 71 at 7 n.1. The only remaining issue is whether the Medicaid Act Claim is adequately alleged as to Director Baass.

### 1. Medicaid Act Claim

Because the Medicaid Act Claim is **DISMISSED** with leave to amend, the argument that the FAC fails to state a claim under the Medicaid Act against Director Baass is **MOOT**.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV23-06921 JAK (Ex) | Date | 6/11/2024 |
| Title | Ocean S., et al. v. Los Angeles County, et al. | | |

     2.     <u>Section 504 and ADA Claims</u>

Because the Integration Mandate Claims are **DISMISSED** with leave to amend, it is only necessary to consider whether the General Discrimination and Methods of Administration Claims brought by the Named Plaintiffs other than Monaie T. are adequately alleged against DHCS.

The FAC alleges that "DHCS is the single state agency responsible under federal law for the administration of California's Medicaid program." Dkt. 21 ¶ 32. It is alleged that "CDSS and DCFS, together with DHCS and DMH, are public agencies that all accept federal dollars and are responsible for ensuring that youth in the foster care system with mental health conditions are served in accordance with federal law, including the ADA and Section 504." *Id.* ¶ 130. It is then alleged that "DHCS administers the EPSDT behavioral health services entitlement to youth primarily through two complicated parallel systems": (1) "County Mental Health Plans are responsible for providing Specialty Mental Health Services ('SMHS') under the authority of a section 1915(b) waiver approved by the Centers for Medicare & Medicaid Services"; and (2) "Medi-Cal Managed Care Plans, or fee for service providers for youth not enrolled in managed care, are responsible for providing so-called non-Specialty Mental Health Services." *Id.* ¶ 262.

The Ninth Circuit has held that "even in the absence of a regulation explicitly saying so, a State cannot avoid its obligations under federal law by contracting with a third party to perform its functions." *Armstrong v. Schwarzenegger*, 622 F.3d 1058, 1074 (9th Cir. 2010). Thus, although supervisory liability is generally insufficient to form the basis for a claim, "courts have found state agencies liable under Section 504 of the Rehabilitation Act under for a failure to supervise." *Ling v. City of Los Angeles*, No. 11-CV-07774-SVW-E, 2012 WL 12845365, at *2 (C.D. Cal. Aug. 30, 2012). This is consistent with the principle that "Congress's interest in eliminating disability-based discrimination 'flows with every dollar spent by a department or agency receiving federal funds.' " *Indep. Living Ctr. of S. Cal. v. City of Los Angeles*, No. CV 12-00551 SJO (PJWx), 2012 WL 13036779, at *8 (C.D. Cal. Nov. 29, 2012) (quoting *Koslow v. Pennsylvania*, 302 F.3d 161, 175-76 (3d Cir. 2002)).

For these reasons, the CDSS MTD is **DENIED**.

     F.     CalHHS MTD

CalHHS seeks to dismiss all claims against CalHHS--the 1983 Claims, *i.e.*, the AACWA Claim, Substantive Due Process Claim, Procedural Due Process Claim and Familial Association Claim, and the Section 504 and ADA Claims--for failure to state a claim. Dkt. 49 at 4. Plaintiffs again concede that under the Eleventh Amendment, the 1983 Claims against CalHHS should be dismissed as to the state agency. Dkt. 72 at 3 n.2. The only remaining issue is whether the 1983 Claims are adequately alleged against Secretary Ghaly.

     1.     <u>1983 Claims</u>

The FAC alleges that as Secretary CalHHS, "Defendant Ghaly is responsible for the administration and oversight of CalHHS and its departments and offices that provide a wide range of services in the areas of health care, mental health, public health, alcohol and drug treatment, income assistance, social

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV23-06921 JAK (Ex) | Date | 6/11/2024 |
|---|---|---|---|
| Title | Ocean S., et al. v. Los Angeles County, et al. | | |

services, and assistance to people with disabilities." Dkt. 21 ¶ 29. The FAC includes no additional allegations about Secretary Ghaly. Because a "general supervisory power over the persons responsible for enforcing the challenged provision will not subject an official to suit," *Nichols v. Brown*, 859 F. Supp. 2d 1118, 1131 (C.D. Cal. 2012) (quoting *Snoeck v. Brussa*, 153 F.3d 984, 986 (9th Cir. 1998)), the CalHHS MTD is **GRANTED** with leave to amend.

        2.    <u>Section 504 and ADA Claims</u>

Because the Integration Mandate Claims are **DISMISSED** with leave to amend, it is only necessary to consider whether the General Discrimination and Methods of Administration Claims brought by the Named Plaintiffs other than Monaie T. are adequately alleged against CalHHS.

The FAC alleges that "CalHHS oversees departments and offices that provide a wide range of services in the areas of health care, mental health, public health, alcohol and drug treatment, income assistance, social services, and assistance to people with disabilities." Dkt. 21 ¶ 28. It is alleged that "CalHHS oversees and monitors the California Department of Social Services and the California Department of Health Care Services." *Id*. Although the FAC includes no additional factual allegations about CalHHS, as noted, Section 504 presents an exception to the general rule that supervisory liability insufficient to form the basis for a claim. *See Ling*, 2012 WL 12845365, at *2. Moreover, the Ninth Circuit has made clear that "State Defendants may not harvest [] immunity for ADA violations." *Castle v. Eurofresh, Inc.*, 731 F.3d 901, 910 (9th Cir. 2013); *see also Henrietta D. v. Bloomberg*, 331 F.3d 261, 286 (2d Cir. 2003) (A "state defendant is liable to ensure that localities comply with the Rehabilitation Act in their delivery of federally-funded social services" because "a presumption that the State is responsible for guaranteeing that local entities delivering services comply with the Rehabilitation Act is consistent with Congress's practice in other Spending Clause legislation.").

For these reasons, the CalHHS MTD is **DENIED**.

**V.**    <u>Conclusion</u>

For the foregoing reasons, the MTDs are **GRANTED IN PART** and **DENIED IN PART**.

The County SMJ MTD is **DENIED**.

The County 12(b)(6) MTD is: (1) **GRANTED** with leave to amend as to the AACWA claim; (2) **DENIED IN PART** as to the Substantive Due Process Claim brought by the Named Plaintiffs other than Jackson K. to the extent it is premised on a right to shelter, but **GRANTED IN PART** with leave to amend as to all other bases for the Substantive Due Process Claim; (3) **GRANTED** with leave to amend as to the Procedural Due Process Claim; (4) **GRANTED** with leave to amend as to the Familial Association claim; (5) **GRANTED** with leave to amend as to the Medicaid Act Claim; and (6) **DENIED IN PART** as to the General Discrimination and Methods of Administration Claims brought by the Named Plaintiffs other than Monaie T, but **GRANTED IN PART** with leave to amend as to all Section 504 and ADA Claims brought by Plaintiff Monaie T. and as to the Integration Mandate Claims brought by all the Named Plaintiffs. The Department Joinder is resolved in the same manner.

The Department MTD is **DENIED** on the ground that the FAC fails to state Section 504 and ADA

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV23-06921 JAK (Ex) | Date | 6/11/2024 |
|---|---|---|---|
| Title | Ocean S., et al. v. Los Angeles County, et al. | | |

Claims against DMH, subject to the same proviso as the County 12(b)(6) MTD. The Department MTD is **DENIED** on the ground that DMH and DCFS are redundant defendants.

The CDSS MTD is **GRANTED** with leave to amend on the ground that the FAC fails to state 1983 Claims against Director Johnson, but **DENIED** on the ground that the FAC fails to state Medicaid Act Claims against CDSS, subject to the same proviso as the County 12(b)(6) MTD.

The DHCS MTD is **DENIED** on the ground that the FAC fails to state Section 504 and ADA Claims against DHCS, subject to the same proviso as the County 12(b)(6) MTD.

The CalHHS MTD is **GRANTED** with leave to amend on the ground that the FAC fails to state 1983 Claims against Secretary Ghaly, but **DENIED** on the ground that the FAC fails to state Section 504 and ADA Claims against CalHHS, subject to the same proviso as the County 12(b)(6) MTD.

The CSAC Motion for leave to file an amicus brief in support of Defendants is **GRANTED**.

Any amended complaint shall be filed within 30 days of the issuance of this Order; it shall include factual allegations to support each individual claim each Named Plaintiff seeks to bring against each individual Defendant. If any claim asserted by/against a specific party is then challenged, the parties shall include in their briefing citations to the relevant portions of the amended complaint. In addition, any opposition briefing shall include a chart with citations to the relevant portions of the amended complaint on a claim-by-claim as well as a party-by-party basis. The reply shall include the same chart with any disputes and/or revisions. Finally, the parties are instructed to coordinate briefing as to the same claims and/or arguments to the extent possible.

**IT IS SO ORDERED.**

_____ : _____

Initials of Preparer    tj