# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| OCEAN S., et al. | CASE NO. 2:23-cv-06921-JAK-E |
| Plaintiffs, | **STIPULATED ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION** |
| v. | |
| LOS ANGELES COUNTY, et al., | |
| Defendants. | |

## 1. GENERAL PROVISIONS

1. This Order will govern discovery of electronically stored information ("ESI") in this case.

2. The parties are aware of the importance the Court places on cooperation and commit to meet and confer in good faith throughout the matter consistent with this Court's Standing Order on Discovery Disputes, the Federal Rules of Civil Procedure, and the Local Rules of this Court. The parties acknowledge that they have reviewed and shall reference the Court's Checklist for Conference of Counsel Regarding ESI during any Rule 26 conference and when seeking to resolve discovery disputes about ESI during meet-and-confer conferences.

3. The parties have identified liaisons to each other who are and will be knowledgeable about and responsible for discussing their respective ESI. Each e-discovery liaison will be, or have access to those who are, knowledgeable about the technical aspects of e-discovery, including the location, nature, accessibility, format, collection, search methodologies, and production of ESI in this matter. The parties will rely on the liaisons, as needed, to confer about ESI and to help resolve disputes without court intervention.

4. To the extent reasonably practicable, the production of documents shall be conducted in a manner that facilitates efficient access to documents and minimizes related discovery costs. The terms of this Order shall be construed so as to ensure the prompt, efficient, and cost-effective exchange of information consistent with the Federal Rules of Civil Procedure, this Court's Civil Standing Order, the Local Rules of the Central District of California, and any other orders by this Court.

5. Except as specifically limited herein, this Order governs the production of discoverable documents by the parties and third-parties to the litigation.

6. This Order shall not enlarge, reduce, or otherwise affect the scope of discovery in this litigation as imposed by Federal Rules of Civil Procedure, this Court's Civil Standing Order, the Local Rules of the Central District of California, and

any other orders by this Court, nor imply that discovery produced under the terms of this Order is properly discoverable, relevant, or admissible in this or in any other litigation.

7. Nothing in this Order shall be interpreted to require disclosure of materials that a party contends are not discoverable or are protected from disclosure by the attorney-client privilege, the attorney work product doctrine, or any other privilege that may be applicable. Additionally, nothing in this Order shall be deemed to waive or limit any Party's right to object to the production of certain electronically stored information, or to move for an appropriate protective order on the ground that the sources are not reasonably accessible because of undue burden or cost or otherwise.

8. The Parties agree to alert all other Parties concerning any technical problems associated with complying with this Order. To the extent compliance with this Order imposes an unanticipated, undue burden with respect to any protocol stated herein, the parties shall promptly confer in an effort to resolve the issue.

9. Consistent with their obligations under the Federal Rules of Civil Procedure, this Court's Civil Standing Order, and the Local Rules of the Central District of California, the parties will attempt to resolve disputes regarding the issues set forth herein prior to filing a motion with the Court, or otherwise seeking relief. If the Parties are unable to resolve the dispute after a good faith effort, the parties may seek Court intervention in accordance with the Court's procedures.

**2.     KEYWORD SEARCHES**

1. For voluminous ESI such as emails that can be most efficiently searched for responsive documents using keyword searches, the Parties agree to conduct keyword searches using search terms that have been reasonably calculated in good faith to retrieve responsive ESI. Within one week following the transmittal of the first document production that used ESI searches in response to a request for production, the producing party shall disclose:

   a. the search terms it applied to the overall collected materials to

retrieve responsive ESI (regardless of whether the first production includes ESI using all of the search terms or only a subset thereof);

      b.    the custodians and document repositories (e.g., shared drives, databases, wikis) searched (regardless of whether the first production includes ESI using all of those custodians and repositories or only a subset thereof);

      c.    any date restrictions applied;

      d.    Any other restrictions (e.g., file types) which would limit the universe of data to which search terms will be applied; and

    2.    If a party producing ESI on a rolling basis modifies its search terms, custodians, document repositories, and date restrictions after any document production, it will disclose those modifications without delay and no later than a week following the transmittal of the next document production. The producing party shall retain the sole right and responsibility to manage and control searches of its data files, including the right to make revisions to the parameters of its document review, in order to make the review more accurate and cost-effective, provided that it will disclose those revisions per above.

    3.    The parties reserve all rights to challenge the adequacy of the search terms, custodians/repositories, and other restrictions that are used by another party to collect responsive ESI using keywords, and contemplate that ESI productions will be completed on a rolling basis in a sufficiently timely manner to leave adequate time for such challenges. If a party believes that a keyword search is inadequate for any of the above reasons, or that discovery has revealed that a supplemental search would be appropriate, the party shall propose the supplemental custodians, repositories, search terms, and/or parameters, and the parties shall meet and confer in good faith about whether such an additional search would be relevant and proportional to the needs of the case. The producing party shall provide a Hit Report with the number of unique records (with and without families) that the search returned, as well as the number of unique records (with and without families) for each term (i.e., returning that term and

no others) for the proposed additional search, or explain why such a report would be unduly burdensome or otherwise inappropriate. If the parties reach an impasse as to the requested supplemental search, the requesting party may move to compel. The burden shall be on the moving party to justify its request for additional custodians, repositories, search terms, and/or parameters.

### 3. TECHNOLOGY-ASSISTED REVIEW

If a producing party elects to apply technology assisted review ("TAR") for the identification or review of responsive records for production, it shall disclose that to opposing counsel without delay and the parties will meet and confer about the use of TAR, including appropriate disclosures regarding the producing party's TAR process and the timing of those disclosures. If the parties fail to reach agreement, the receiving party may move to compel additional disclosure about the producing party's TAR process. Nothing herein restricts a producing party from using TAR to help organize or manage its internal review process, provided, however, that a party using TAR to identify or review documents for production will disclose the same, per above.

### 3. DEDUPLICATION

Parties will ensure that only exact (bit-by-bit) duplicates are subject to deduplication using industry standard eDiscovery software. Deduplication shall occur at the family rather than file level (*e.g.*, a standalone document that is an exact copy of an email attachment shall not deduplicate).

### 4. EMAIL THREAD SUPPRESSION

A producing party may use industry-standard email thread suppression to suppress non-inclusive or duplicative messages within email threads, and produce only the unique and/or most complete version of an email thread, consisting of those that are textually unique, include unique attachments, or both. Duplicative emails shall include only those email messages in which the parent document, senders and recipients (including blind copy), and all attachments are exactly the same. If a producing party elects to utilize such email thread suppression for its productions, it

shall use industry standard eDiscovery software to do so and disclose the name of the software to receiving Party.

### 5. PRODUCTION FORMAT

#### a) ESI Production Format

Except as provided in Sections 7(d), 7(e), and 9(c), ESI shall be produced electronically, as single page, uniquely and sequentially numbered Group IV TIFF files at 300 dpi resolution, with a corresponding load file ("Image Load File") and document-level Extracted Text files. For ESI that does not have Extracted Text, a document-level Object Character Recognition ("OCR") text file shall be created and included, associated with the underlying records, and included in the production. With regard to ESI documents that are redacted for privilege or responsiveness, the images shall be accompanied by OCR text files generated after redaction (thereby excluding the redacted portions from the OCR file). All text files shall be named to match the endorsed number assigned to the image of the first page of the document. The images shall also be accompanied by an "OPT" image cross-reference load file corresponding to the TIFF files, a data load file ("DAT") providing the beginning and ending endorsed number of each document and the number of pages it comprises, shall contain the metadata associated with each Production Field specified in the Metadata Appendix and suitable for loading into an industry standard litigation database (*e.g.*, Relativity), and shall provide links to document-level text files. Notwithstanding anything to the contrary, all documents shall be produced as they are maintained in the ordinary course of business.

#### b) Production of Paper Discovery

The producing party shall produce hard-copy documents electronically as scanned, single-page TIFF image format, uniquely and sequentially numbered Group IV TIFF files at 300 DPI resolution, with a corresponding load file ("Image Load File") and document-level OCR text file, but may provide PDF format when single-page TIFF format is not practicable. With regard to hard copy documents produced

electronically that are redacted for privilege or responsiveness, the images shall be accompanied by document-level OCR text files generated after redaction (thereby excluding the redacted portions from the OCR file). The images shall also be accompanied by an "OPT" image cross-reference load file corresponding to the TIFF files, a data load file ("DAT") providing the beginning and ending endorsed number of each document and the number of pages it comprises, shall contain the relevant hard copy Production Fields specified in Schedule A and suitable for loading into an industry standard litigation database (*e.g.*, Relativity), and shall provide links to document-level text files. If a hard copy document is more than one page, to the extent possible, the unitization of the document and any attachments or affixed notes shall be maintained as it physically existed when collected by the producing party and shall include appended notes, post-its, coversheets, or labels.

### d) Appearance and Content

Subject to any appropriate redactions, each document's TIFF/JPEG/PDF file shall be a static representation of the contents of the document in its original format, whether paper or electronic. Parties shall make efforts to resolve issues such as imaging or formatting problems or documents that are not reasonably usable in the prescribed form of production. Documents containing color need not be produced in color unless the color lends special context or substance to the document.

### e) Production of ESI in Native Format

Parties agree that spreadsheet files (*e.g.*, Microsoft Excel) and multimedia files (*e.g.*, Video or Audio files) shall be produced in their Native Format. In the event that production of other types of documents in TIFF/JPEG/PDF file format would be impracticable or not reasonably usable, the producing party shall produce any other such documents in Native Format. Metadata load file for files produced natively shall contain a link to the produced Native Files, as indicated in APPENDIX A.

### f) Databases and Structured Data and Proprietary Systems

Certain data types may be impracticable or not reasonably usable to produce in

TIFF/JPEG/PDF or in Native Format. Potential examples include, but are not limited to, structured data stored in a database, documents created in a non-commercially available system or applications that are only meaningful when viewed in the context of that system or application or data created in legacy software that is no longer available. Without imposing or undertaking any obligations in excess of those provided by the Federal Rules of Civil Procedure, the Parties agree to meet and confer with respect to the production of this type of data to determine how such data might be produced in a cost reasonably usable way. For example, structured data in a database might best be produced as static reports from the database.

### g) Document Numbers and Confidentiality Designations for Documents Produced as Images

Each page of a document produced in TIFF/JPEG/PDF file format shall have a legible, unique fixed-length numeric identifier ("Document Number") containing at least eight (8) digits electronically overlayed onto the image in no less than 10-point font. Unless it would obscure, conceal or interfere with any information originally appearing on the document, the Document Number shall be overlayed on the lower right hand corner of the document. Unless it would obscure, conceal or interfere with any information originally appearing on the document, any confidentiality designation pursuant to the Stipulated Protective Order entered in this case shall appear on the lower left hand side of each page of a document produced, in no less than 10-pt font. The Document Number for each document shall be created so as to identify the producing party and the Document Number (*e.g.*, "DEF00000001") and shall not contain spaces. Each producing party shall use a unique identifying name of its choice.

### h) Document Numbers and Confidentiality Designations for Documents Produced in Native Format

Since Native Format productions are not static and cannot be branded on each page in the same manner as TIFF/JPEG/PDF images, each electronic file produced in Native Format shall be assigned a unique Document Number. The producing party

shall include a single-page TIFF/JPEG/PDF image branded with this unique Document Number and the phrase "PRODUCED IN NATIVE FORMAT" branded in the center of the page. To protect the confidentiality of files produced natively, any confidentiality designations pursuant to the Stipulated Protective Order must appear on the TIFF/JPEG/PDF placeholder on the lower left hand corner in no less than 10-point font. Native file names shall be identical to the Document number, followed by the file extension, (*e.g.*, "DEF00000001.xls"). No party may attach to any pleading or any correspondence addressed to the Court, or any adverse or third party, or submit as an exhibit at a deposition or any other judicial proceeding, a copy of any document in Native Format produced by any party without ensuring that the corresponding Bates number and confidentiality legend, as designated by the producing party, appears in the Native File name.

### h) Exception Files

The Parties will use reasonable efforts to address Documents that present imaging or form production problems (including encrypted and/or protected files identified during the processing of ESI) ("Exception Files"). Exception Files identified for production will be produced as a Bates-stamped placeholder TIFF/JPEG bearing the legend "This document was unable to be processed." The parties will meet and confer regarding requests for the production of the native versions of Exception Files. The producing party will undertake reasonable efforts to attempt to make encrypted or password-protected files available. If the Parties cannot reach agreement on the handling of Exception Files through the meet and confer process, the matter may be submitted to the Court for resolution.

### i) Hyperlinked Content

The producing party shall produce any responsive, non-privileged, nonpublic hyperlinked content within responsive, non-privileged emails or other collaborative documents (*e.g.*, wikis, SharePoints, etc) solely to the extent such hyperlinked content is itself in the producing party's possession, custody, or control, and associate such

linked content either by treating as a family with appropriate group identifier metadata or via some other metadata that clearly identifies the link between the communication and the hyperlinked file, to the extent practicable.

### l) Parent-Child Relationships

Parent-child relationships (defined as the association between an attachment and its parent document or between embedded documents and their parent) shall be preserved.

### m) Family Groups

A document and all other documents in its attachment range, emails with attachments, and files with extracted embedded OLE documents all constitute family groups. If any member of a family group is produced, all members of that group must either also be produced or else logged as privileged or withheld based on other enumerated grounds set out in the Protective Order, and no such member shall be withheld from production as a duplicate. No family members shall be withheld from production on relevance grounds, other than for the specific grounds enumerated in the Protective Order. If a member of a family group is withheld from production under a privilege objection and that document is later determined not to be privileged, the document shall then be produced with metadata that links it to the family group from which it was originally withheld.

## 6. REDACTIONS AND PRIVILEGE LOG

1. On a rolling basis within 60 days of each document production, each party shall provide a log of redacted documents in that production..

2. On a rolling basis, within 60 days of substantial completion of production in response to any request for production, each party shall provide a log of documents responsive to that request for production but withheld for any reason.

3. Notwithstanding the prior two paragraphs, by no later than 60 days before the fact discovery cutoff, each party shall produce a log of all remaining responsive documents it has withheld or redacted.

4. Pursuant to Fed. R. Evid. 502(d), the production of a privileged or work-product-protected document, whether inadvertent or otherwise, is not a waiver of privilege or protection from discovery in this case or in any other federal or state proceeding. For example, the mere production of privileged or work-product-protected documents in this case as part of a mass production is not itself a waiver in this case or in any other federal or state proceeding

5. Similarly, the production of any personally identifiable information, or other private information, or confidential information does not constitute waiver of those rights, privileges, and protections, whether inadvertent or not.

6. Documents and communications involving litigation counsel need not be logged.

7. If a party believes that a document-by-document privilege log is infeasible for a particular category of documents other than communications involving litigation counsel, the parties will meet and confer about the scope and content of a categorial privilege log for those documents.

## 7. THIRD PARTY SUBPOENAS

A Party that issues a non-party subpoena (the "Issuing Party") must include a copy of this Order with the subpoena and request that the non-party produce documents in accordance with the specifications set forth herein.

The Issuing Party is responsible for producing, without modification or exclusion, any documents obtained pursuant to a non-party subpoena to all other parties.

If the non-party production is not Bates-stamped, the Issuing Party will brand the non-party production images with unique prefixes and Bates numbers, or otherwise identify Native Files before producing them to the other parties, per the technical specifications outlined in this Order's Protocol.

Nothing in this Order is intended to, or may be interpreted as, narrowing, expanding, or otherwise affecting either the rights of the Parties or of any non-parties

to object to a subpoena.

**8.   MODIFICATION**

This Stipulated Order may be modified by a Stipulated Order of the parties or by the Court for good cause shown, including but not limited to, if compliance with this Stipulated Order proves unduly burdensome, impracticable, disproportionate, unreasonably expensive, leads to undue delay, interferes with governmental functioning, or is otherwise unreasonable in practice.  Nothing in this Stipulated Order waives these rights.

**9.   INFORMATION SECURITY AND PRIVACY**

1. Upon discovery or reasonable belief of any unauthorized access, use, modification, exposure, acquisition, disclosure, compromise, or loss of County, DCFS or State Defendants' data and information ("Security Incident"), the County and State Defendants shall be notified no later than (48) hours. Breach reports of shall include, to the extent available, the identification of everyone whose Data has been, or is reasonably believed to have been accessed, viewed, acquired, or disclosed during such breach.

2. When storing or transferring any electronic data or information covered by this Order to or from a cloud-based environment, the parties must ensure that the ESI is fully encrypted, with AES 256-bit encryption, and must make a good-faith effort to ensure the ESI is not disclosed or made available to any unauthorized party.

3. All ESI covered by this Order shall be stored on document storage media encrypted with AES 256-bit encryption, and kept in a location that is not accessible to any unauthorized party.

4. The parties shall take reasonable steps to: (a) prevent unauthorized public disclosure or dissemination of any information covered by this Order; and (b) establish and maintain reasonable and appropriate measures and safeguards to prevent such unauthorized disclosure or dissemination.  This includes measures to promptly identify, detect, defend, respond to, mitigate, and prevent any unauthorized acquisition,

access, use, alteration, disclosure, loss, or damage of due to any cause, whether intentional, accidental, manmade, or natural. A receiving party who is or becomes aware of a disclosure covered by this paragraph shall notify the producing party thereof within 24 hours of its discovery.

Dated: November 4, 2024

By: /s/ Grant A. Davis-Denny
Grant A. Davis-Denny
Munger, Tolles & Olson LLP
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071-3426
Telephone: (213) 683-9100
Facsimile: (213) 687-3702
*Attorney for Plaintiffs*

Dated: November 4, 2024

By: /s/ Farbod S. Moridani
Farbod S. Moridani (SBN 251893)
fmoridani@millerbarondess.com
Miller Barondess, LLP
2121 Avenue of the Stars, Suite 2600
Los Angeles, California 90067
Telephone: (310) 552-4400
Facsimile: (310) 552-8400
*Attorney for County Defendants*

Dated: November 4, 2024

By: /s/ Andrew Z. Edelstein
Andrew Z. Edelstein
andrew.edelstein@doj.ca.gov
California Department of Justice
300 S Spring St, Ste 1702
Los Angeles, CA 90013-1256
Deputy Attorney General
*Attorney for State Defendants*

**IT IS ORDERED** that the forgoing Agreement is **APPROVED.**

Dated: 11/5/24

_____
CHARLES F. EICK
UNITED STATES MAGISTRATE JUDGE

# METADATA APPENDIX

| Field | Definition | Record Type |
|---|---|---|
| BEGBATES | Beginning Bates Number (production number). | All |
| ENDBATES | Ending Bates Number (production number). | All |
| BEGATTACH | First Bates number of family range, i.e. Bates number of the first page of the parent e-mail or document. | Email, eDocuments |
| ENDATTACH | Last Bates number of family range, i.e. Bates number of the last page of the last attachment or, if no attachments, the document itself. | Email |
| PGCOUNT | Number of pages in the document. | All |
| HASHVALUE | MD5 hash value. | All |
| ALLCUSTODIANS | List of all persons or data sources from where documents/files are produced; values delimited by semi-colon. | All |
| FILESIZE | File Size. | All |

| Field | Definition | Record Type |
|---|---|---|
| FILEPATH | Original file/path of the location where the item was located at the time of collection. This should include location, file name, and file extension. Any container name should be included in the path. | eDocuments |
| FILENAME | Original file name at the point of collection. | eDocuments |
| EXTENSION | File extension. | All |
| EMAILID | Email system identifier assigned by the host email system. This value is extracted from parent message during processing. | Email |
| EMAILSUBJECT | Subject line of email. | Email |
| EMAILFROM | Email sender. | Email |
| EMAILTO | Email recipient. | Email |
| EMAILCC | Additional email recipients. | Email |
| EMAILBCC | Blind, additional email recipients. | Email |
| TITLE | Document title as assigned by | eDocuments |
| AUTHOR | Creator of a document. | eDocuments |
| LASTMODIFIEDBY | Last person/user who modified or saved a document. | eDocuments |
| DATECREATED (*mm/dd/yyyy hh:mm:ss* | Creation Date and Time. | eDocuments |

| Field | Definition | Record Type |
|---|---|---|
| DATELASTMODIFIED (*mm/dd/yyyy hh:mm:ss AM*) | Date and Time Last Modified. | eDocuments |
| DATESENT (*mm/dd/yyyy hh:mm:ss AM*) | Date and Time the email was sent. | Email |
| IMPORTANCE | Indication of Priority of E-mail message. | Email |
| REDACTION | Indicator for documents that have been redacted. PRIVILEGED for Privilege redactions, PII for Personal Identifying Information redactions. | All |
| CONFIDENTIALITY | Confidentiality level as assigned pursuant to any applicable Protective Order or stipulation to match branding on the face of production image. | All |
| EXCEPTION | "Y" or "Yes" for documents that were processing or extractions exceptions, blank/null if not present. | All |
| NATIVEFILELINK | For documents provided in native format only. | All |
| TEXTPATH | File path for OCR or Extracted Text files. | All |